[Civ. No. 578. Fifth Dist. Apr. 25, 1966.]

BETTY ~GRIMES, Plaintiff and Appellant, v. AUBREY
CARTER, Defendant and Respondent.

Granger & Moe and Lewis A. Moe for Plaintiff and Appellant.

Frederic A. Jacobus for Defendant and Respondent.

CONLEY, P. J.—The question to be determined on this appeal is whether a plaintiff may escape the necessity of filing the undertaking required by section 830 of the Code of Civil Procedure in an action based on the classical elements of slander by claiming that the damages sought arise wholly from an invasion of plaintiff's privacy or because of her consequent emotional distress. The judgment of dismissal was preceded by an order sustaining a general demurrer to the amended complaint without leave to amend and granting a motion to dismiss because of a failure to post the required bond.

We have reached the conclusion that, in the circumstances shown by the record, it was essential that plaintiff file such an undertaking in the sum of $500, and that because of her failure to do so and her formal written statement that she would

not, the trial court was correct in its ruling and its dismissal of the action.

The plaintiff, Betty Grimes, sets up her claim against the defendant in four causes of action. The amended pleading is entitled "First Amended Complaint for Damages for Invasion of Privacy, Intentional Causing of Mental, Emotional and Physical Distress and Attempt to Influence Plaintiff from Continuing a Certain Court Action." The trial judge correctly said that the entitlement was not a legitimate part of the pleading, and that the tenor and effect of the amended complaint must be deduced from its contents rather than from what counsel saw fit to call it.

In the first cause of action it is alleged that the plaintiff is a citizen living an ordinary private life in Delano, California; that the defendant is a private investigator; and that on or about April 15, 1964, without legal right, he told one Helen Penrod of Delano that: "I have obtained written statements signed by two married men that they have had sexual intercourse with Betty Grimes. There are other men who have had sexual intercourse with her but they will not give me a statement."

It is then averred that these assertions were made wilfully, maliciously and deliberately, that they were false and were known to be false when made, that the defendant expected that plaintiff would learn of the statements, and that he intended to inflict upon her sufficient embarrassment, humiliation and mental and emotional distress to cause her to abandon a then pending paternity action; that plaintiff subsequently learned the substance of the statements and the name of the person to whom they were made, and that the making of said statements caused her great mental pain, humiliation, mortification and embarrassment and has exposed her to grievous mental and physical suffering.

The second cause of action is the same in effect; however, it is alleged that the oral statements were made to one Bernice Harwood of Delano; she was told by the defendant that he had obtained written confessions from four married men, rather than two, admitting that each of them had had sexual relations with the plaintiff.

In the third cause of action it is alleged that the following oral communication was made by the defendant to one Ralph Forquera of Delano: "I know all about Betty Grimes. If the Betty Grimes paternity suit goes to court Betty Grimes will be dragged through the mud. It will be messy. I have proof of

several men who have been in the back seat of her car with her in the vineyards.''

The fourth cause of action blankets the allegations of the three preceding counts and avers that similar statements were made to from 10 to 20 people in Delano or vicinity; that this course of conduct was intended by the defendant to inflict upon plaintiff sufficient embarrassment, humiliation, and mental and emotional 'distress to cause her to abandon her paternity action; that said charges were false and known by defendant to be false when made.

It should be noted that the complaint does not allege that embarrassment, humiliation, and emotional distress were caused by anything said or done by the defendant to, or in the immediate presence of, the plaintiff. On the contrary, each of the counts states a cause of action for oral 'defamation originally communicated by the defendant to people other than the plaintiff herself. Her emotional distress resulted from hearing of alleged untrue and slanderous statements which attacked her chastity. Thus, plaintiff's distress was secondary to the slanderous statements made about her to various people in Delano. We must assume, of course, in our ruling, that all of the allegations properly pleaded were true. (*Hopper* v. *Hopper*, 224 Cal.App.2d 446 [36 Cal.Rptr. 767].) Their truth or falsity would be a matter for 'determination by the finder of fact at a later trial.

Section 46 of the Civil Code provides in apposite terms as follows: ''Slander is a false and unprivileged publication, orally uttered, and . . . which:

''. . . . . . . . . . . .

''4. Imputes to [the plaintiff] . . . a want of chastity; . . .''
(See *Hollman* v. *Brady*, 233 F.2d 877; *Mercado* v. *Hoefler*, 190 Cal.App.2d 12, 18 [11 Cal.Rptr. 787].)

The defendant filed a demurrer to the original complaint and a motion to 'dismiss the action. On March 17, 1965, the trial judge sustained the demurrer without leave to amend and granted the motion to dismiss. However, after a sincere formal request of plaintiff's counsel for reconsideration supported by numerous authorities claimed to be in point, the court vacated the order and made a new ruling that the motion to dismiss be denie'd and the demurrer to the complaint sustained with 10 days' leave to amend. A first amended complaint was thereupon filed, and a demurrer and notice of motion to dismiss the amended complaint were duly served and filed.

By order 'dated May 6, 1965, the court overruled the demur-

rer and gave the defendant 15 days to answer or further plead. The order continued: "However, since the complaint is based on slander and plaintiff has not filed a bond as required by Section 830 of the Code of Civil Procedure, the first amended complaint will be dismissed unless plaintiff, within ten days after notice of this order, files the bond as required by the above section." Thereafter, plaintiff filed a "Notice of Disclaimer and Request for Ruling," saying: "The Court is respectfully advised that plaintiff disclaims any claim or cause of action based on a legal theory of slander. Accordingly, plaintiff will not file a bond pursuant to CCP Sec. 830.

"Plaintiff's complaint has been and is submitted to the Court on the legal basis of (1) intentionally caused physical and emotional distress caused by outrageous language and (2) invasion or intrusion of plaintiff's privacy.

"It is therefore requested that the Court render an immediate ruling on the demurrer under consideration in view of the foregoing." The court, thereafter, changed the applicable rulings by making the following order leading to the judgment of dismissal: "Demurrer is sustained without leave to amend. Motion to dismiss the action is granted."

 In passing, if it be thought that the court could not properly so change the rulings on the demurrer and motion to strike, it should be remembered: "Like many other intermediate rulings prior to final judgment an order overruling or sustaining a demurrer is not res judicata, and the trial judge may reconsider it, decide that it was erroneous, and make a different order." (2 Witkin, Cal. Procedure (1954) Pleading, § 502, subd. (c), p. 1493.) (See *De La Beckwith* v. *Superior Court,* 146 Cal. 496 [80 P. 717]; *Vertex Inv. Co.* v. *Schwabacher,* 57 Cal.App.2d 406, 409 [134 P.2d 891]; *Kelly* v. *Liddicoat,* 35 Cal.App.2d 559, 564 [96 P.2d 186]; *Timm* v. *McCartney,* 9 Cal.App.2d 230, 232 [49 P.2d 315]; *People* v. *Risenhoover,* 240 Cal.App.2d 233 [49 Cal.Rptr. 526].)

The appellant contends that, entirely apart from any allegations establishing slander, the complaint shows an illegal invasion of the privacy of the plaintiff. (*Bowden* v. *Spiegel, Inc.,* 96 Cal.App.2d 793 [216 P.2d 571]; *Norris* v. *Moskin Stores, Inc.,* 272 Ala. 174 [132 So.2d 321].) Whatever may be the ruling in other jurisdictions, California adheres to the proposition that the right of privacy may not be violated by word of mouth only. In the recent case of *Gautier* v. *General Tel. Co.,* 234 Cal.App.2d 302 [44 Cal.Rptr. 404], an appeal was taken from a judgment of dismissal after a demurrer was

sustained without leave to amend. One of the several causes of action which the plaintiffs attempted to state was predicated upon the theory of invasion of the right of privacy; at page 309 of the opinion, the reviewing court thus disposed of that cause of action: "Count VII charges an invasion of plaintiffs' right of privacy. The above right was invaded, according to the pleading, when defendant told certain unidentified persons that plaintiffs' phone was disconnected and such persons reasonably believed that plaintiffs had not paid their telephone bill. We need only refer to the landmark case in California, *Melvin* v. *Reid*, 112 Cal.App. 285 [297 P. 97], for our conclusion that the above facts (if true) did not constitute a commission of the tort. In *Melvin* v. *Reid,* it is declared that 'The right of privacy can only be violated by printings, writings, pictures or other permanent publications or reproductions, and not *by word of mouth.*' (Italics added; p. 290.)"

A hearing in the *Gautier* case having been denied by the Supreme Court, "Its judgment stands, therefore, as a decision of a court of last resort in this state, until and unless disapproved by this court. . . ." (*Cole* v. *Rush,* 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137].)

The plaintiff argues that the judgment was improper because she stated a cause of action based on the intentional infliction of emotional distress. In California, "One who has been wrongfully and intentionally subjected to embarrassment, humiliation, fear or other forms of mental anguish may recover compensatory damages even though [she] has suffered no physical injury," and ". . . the right to compensation exists even though no monetary loss has been sustained." (*Leavy* v. *Cooney,* 214 Cal.App.2d 496, 502 [29 Cal.Rptr. 580].) (See also *State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330 [240 P.2d 282]; *Vargas* v. *Ruggiero,* 197 Cal.App.2d 709, 718 [17 Cal.Rptr. 568]; *Bowden* v. *Spiegel, Inc., supra,* 96 Cal.App.2d 793; *Emden* v. *Vitz,* 88 Cal.App.2d 313 [198 P.2d 696].)

In *Perati* v. *Atkinson,* 213 Cal.App.2d 472, at page 474 [28 Cal.Rptr. 898], it is said: "Intentional infliction of emotional distress, without physical trauma, can be a ground of liability (*State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330 [240 P.2d 282]), but only when the defendant's conduct is 'outrageous' (*id.* p. 338); or 'has gone beyond all reasonable bounds of decency' (Rest. 1948 Supp., Torts, § 46, com. g). Where, as here, physical harm has not resulted from the emotional distress, the courts 'tend to look for more in the way of extreme

outrage as an assurance that the mental 'disturbance claimed is not fictitious' (44 Cal.L.R. 40, 53)."

But a recognition of this principle does not answer the primary question presented on this appeal: Whether the trial court was right in ruling that a plaintiff who essentially bases her cause of action upon facts which constitute defamation (Civ. Code, § 44, subd. 2), in this case slander (Civ. Code, § 46, subd. 4), can bypass the requirement of section 830 of the Code of Civil Procedure that an undertaking must be filed for the protection of the defendant.

We are of the opinion that the trial court correctly stated that each of the causes of action in the amended complaint constituted a charge of slander, irrespective of additional allegations. It has been the consistent attitude of the Legislature since the beginning that the defendant in a defamation action is entitled to have such an undertaking posted. (*Bried* v. *Superior Court,* 11 Cal.2d 351 [79 P.2d 1091]; *Shell Oil Co.* v. *Superior Court,* 2 Cal.App.2d 348 [37 P.2d 1078].) This statute is constitutional and expresses the considered public policy of the state with respect to torts involving defamation. It would not be proper for a court to permit a plaintiff to evade this public policy by announcing, as the plaintiff did in this instance, that she does not ask for damages for loss of reputation but only for the humiliation and emotional distress resulting to herself personally from the tort.

In *Huffaker* v. *McVey,* 35 Cal.App. 302 [169 P. 704], the complaint attempted to set forth a cause of action for libel and slander. When the trial court ordered the plaintiff to supply the statutory bond, he failed to do so, filing instead an amended complaint. The court, not to be trifled with, dismissed the action on the ground that the plea'der had not posted the required undertaking. When the plaintiff appealed, the District Court of Appeal of the First Appellate District said at pages 303-304 of the opinion: "In our opinion the original complaint states an action for libel and slander, and the amended complaint, while it perhaps states an action for malicious prosecution, certainly alleges facts sufficient to constitute an action for libel and slander. It was therefore incumbent upon the plaintiff to file the bond as ordered." The dismissal of the case was approve'd.

A more recent case which sheds light on the problem is *Werner* v. *Times-Mirror Co.,* 193 Cal.App.2d 111 [14 Cal.Rptr.

208]. In that action the plaintiff filed a complaint predicated upon the theory of an invasion of the plaintiff's right of privacy; and the plaintiff specifically disclaimed that it was a libel suit. The complaint was nevertheless dismissed and the plaintiff appealed. The reviewing court, at page 120 of the opinion, pointed to language of caution used by William L. Prosser in an article entitled *Privacy*, appearing in 48 California Law Review, page 383, at page 401: " 'It is here, however, that one disposed to alarm might express the greatest concern over where privacy may be going. The question may well be raised, and apparently still is unanswered, whether this branch of the tort is not capable of swallowing up and engulfing the whole law of public defamation; and whether there is any false libel printed, for example, in a newspaper, which cannot be redressed upon the alternative ground.' " The court then pointed out that when it is claimed that a plaintiff has suffered through a libel by a newspaper, under section 48a of the Civil Code, he cannot recover in the absence of a preliminary demand for a retraction followed by a failure to comply therewith, unless he can establish special damages. The opinion continued, at pages 121-122: "Yet, assuming some of the statements of which the appellant complains in his amended complaint to be libelous in nature, to permit him to recover general damages in this case under the theory of the invasion of his right of privacy is to sanction an evasion of the provision of section 48a of the Civil Code. If such recovery cannot be had in the case of libelous statements, no greater relief could be reasonably expected for statements in the challenged publication which are of a nonlibelous character. Consequently, before the tort of the invasion of privacy can be found to extend as far as the appellant contends it does, it must be determined whether there is a public policy as to publication by newspapers expressed in section 48a which stands as a barrier, although no such barrier may exist insofar as some other kinds of publication are concerned."

In its conclusion at page 123, the court declared: "In enacting section 48a of the Civil Code, the Legislature declared the public policy of the state. [Citation.] To extend the tort of invasion of privacy to the extent necessary to reach a determination that the appellant's amended complaint states a cause of action would be to ignore such declaration of public policy and to dilute the effect of such legislation. This court is not free to do so. If a remedy is available under such circumstances, it is in the field of the law of defamation, but the

appellant has disclaimed any intention of pursuing such remedy.''

Although some differences obviously exist between an action based on an invasion of the right of privacy and an action alleging the intentional infliction of emotional distress, and also some differences between a publication by newspaper and an oral publication to private individuals, it seems that the reasoning of the court in the *Werner* case is applicable to the instant appeal. There is a public policy requiring that the plaintiff post an undertaking in a libel or slander suit; for the court to hold that the plaintiff has stated a viable cause of action for emotional distress in her complaint without the necessity of filing an undertaking ''would be to ignore such declaration of public policy and to dilute the effect of such legislation.''

It is elementary that, although the gravamen of a defamation action is injury to reputation, libel or slander also visits upon a plaintiff humiliation, mortification and emotional distress. In circumstances where a plaintiff states a case of libel or slander, such personal distress is a matter which may be taken into account in determining the amount of damages to which the plaintiff is entitled, but it does not give rise to an independent cause of action on the theory of a separate tort. To accede to the contentions of the plaintiff in this case would be, in the words of Prosser, a step toward ''swallowing up and engulfing the whole law of public defamation.'' If plaintiff should prevail in her argument it is doubtful whether any litigant hereafter would file a slander or libel action, post an undertaking and prepare to meet substantial defenses, if she could, by simply contending that she was predicating her claim solely on emotional distress, avoid the filing of such bond and render unavailable such substantial defenses as, for example, justification by truth.

The judgment is affirmed.

Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 22, 1966.