[Civ. No. 39616. First Dist., Div. One. Jan. 21, 1977.]

JOSEPH FUENTES et al., Plaintiffs and Respondents, v.
CHRISTINA PEREZ et al., Defendants and Appellants.

**COUNSEL**

James J. Reilly and Edward F. Towers for Defendants and Appellants.

Birenbaum & Manning and John H. Manning for Plaintiffs and Respondents.

**OPINION**

**ELKINGTON, J.**—This case concerns the right of one, who as a proximate result of another's tortious breach of contract has suffered

damages to his property, to recover, in addition to such damages, damages for emotional distress which also proximately resulted from the tortious breach.

Defendants were licensed contractors (hereafter for convenience, "contractor"). The contractor undertook some construction work on top of plaintiffs' home which necessitated removal of all or a portion of its roof. About 1 p.m., September 25, 1972, while the roof was in that condition, plaintiffs advised the contractor that weather reports indicated rain; however, no steps were taken to protect the house from it. Rain commenced about 5:30 p.m. and with increasing intensity thoroughly drenched the home's interior causing thousands of dollars of damage. Repeated telephone calls were made to the contractor after the rain started, but for one reason or another no protective measures were taken. Finally about 1 o'clock the next morning the fire department came with tarpaulins and covered the exposed portion of the roof. There were other incidents. A workman of the contractor accidentally put his foot through the ceiling, and about two weeks after the above-described rainfall, it rained again causing some additional damage.

Plaintiffs filed an action against the contractor sounding in breach of contract and negligence, seeking compensation for damages to the building and their furniture, furnishings, clothing and personal effects. They also sought damages for "shock and injury to their nervous systems" and for "great mental and physical pain and suffering, . . ."

Following trial of the action, a jury returned a verdict against the contractor in favor of plaintiffs for the damage to their property and effects. That verdict is unchallenged on the contractor's appeal.

But the jury returned an additional verdict finding that plaintiffs Joseph Fuentes and Lorraine Fuentes "did suffer shock causing an injury to [his and her] nervous system resulting in nervousness, anxiety, and emotional upset, . . ." The resultant damages were assessed at $8,000 and $2,000, respectively.

The contractor has appealed from "that portion of the verdict and judgment awarding plaintiff, Joseph Fuentes $8,000.00 and plaintiff Lorraine Fuentes $2,000.00 for emotional distress, shock, and injury to the nervous system . . . ."

The trial court had instructed the jury that plaintiffs were entitled to damages, if proved, for any "emotional upset . . . grief, worry, shock, humiliation and indignity" which caused "a disorder of the nervous system." It is the contractor's contention that such instructions were erroneous.

We point out the evidence upon which the questioned verdict was based.

■ **(See fn. 1.)**   At the trial plaintiff Joseph Fuentes was asked about the emotional impact resulting from the contractor's tortious breach of contract.[1] He replied that it "disturbed" him, it was "horrible," and that "it's hard to put into words how you feel, but if you would have seen my family during this time you would understand it. My wife, my kids, and what they went through, it took over two years—." A neighbor described him as "furious" at the time. A fireman testified that plaintiff Joseph Fuentes "was trying to pick up water at the time" with "buckets and stuff around there, pots," and that he seemed "upset." His wife stated that she had noticed a "change in [her] husband since this whole thing started," and that it "just seems like we are just so upset all the time."

When plaintiff Lorraine Fuentes was asked about her feelings "as this was transpiring," she testified as follows: "A. It was so hard to describe. It was—I felt so helpless and we tried so desperately to get in touch with Oscar [Perez]. I feel at least he could have called us or he could have sent one of his workmen over. I feel there is no excuse whatever. Q. Are you still upset by what has happened? A. Yes, I am. . . . Q. Why are you still upset now? What upsets you now? Is there anything that upsets you now? A. This whole thing upsets me. It seems like it just never ends. . . . And then when I go home I still see the nail holes in the ceilings. I still see my wall carpet that's shrunk and I see the stains. It just seems like there is no end to this. Q. Have you noticed any change in your husband since this whole thing started? A. Yes. Q. How is that? A. It just seems like we are just so upset all the time. [¶] Look, we were so busy trying to do what we could to keep the rain out we were just in a state of shock."

An initial question arises. May it reasonably be said that the "emotional upset . . . grief, worry, shock, humiliation and indignity"

---

[1] It is of course settled that a breach of contract may also be tortious, and that the injured party in such a case may recover either in contract, or in tort. (*Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328, 336 [5 Cal.Rptr. 686, 353 P.2d 294].)

suffered by plaintiffs amounted to physical injuries? Or were they in the nature of emotional distress? ■ (See fn. 2.) If physical injuries they were, the jury's verdicts were undoubtedly proper, for such injuries were established to have proximately resulted from the contractor's tortious conduct.[2] But if instead they must reasonably be considered emotional distress, a different rule will apply—a rule which we shall hereafter discuss.

■ Although the line of demarcation between the two concepts may sometimes be difficult to fix, nevertheless a distinction must be made between "the physiological, rather than the psychological, branch of the human· organism," in determining whether one's symptoms denote physical injuries, or emotional distress. (See *Sloane* v. *Southern Cal. Ry. Co.* (1896) 111 Cal. 668, 680 [44 P. 320]; *Vanoni* v. *Western Airlines* (1967) 247 Cal.App.2d 793, 796 [56 Cal.Rptr. 115].) The question ordinarily is "whether the subsequent nervous disturbance of the plaintiff was a suffering of the body or of the mind. . . . ■ It must be conceded that a nervous shock or paroxysm, or a disturbance of the nervous system, is distinct from mental anguish, and falls within the physiological, rather than the psychological, . . . The nerves and nerve centers of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. If these nerves or the entire nervous system is thus affected, there is a physical injury thereby produced, and, if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect through some action upon the mind." (*Sloane* v. *Southern Cal. Ry. Co.,* supra, p. 680; *Vanoni* v. *Western Airlines, supra,* p. 796.)

■ In the case at hand the evidence reveals no "nervous shock or paroxysm, or a disturbance of the nervous system," or other physical injuries, but rather a psychological "mental anguish" occasioned by the contractor's conduct. Plaintiffs' complaints here under consideration must reasonably be deemed *emotional distress.*

The subject of liability for one's intentional or reckless infliction of emotional distress, unaccompanied by violent personal injury, has often

---

[2]Damages for emotional distress, *accompanied by actionable physical injuries,* are always recoverable. (See *Boa* v. *San Francisco-Oakland T. Rys.* (1920) 182 Cal. 93, 106 [187 P. 2]; *Melone* v. *Sierra Railway Co.* (1907) 151 Cal. 113, 116 [91 P. 522]; *Jones* v. *United Railroads of S.F.* (1921) 54 Cal.App. 744, 753 [202 P. 919]; BAJI (5th ed. 1969) No. 14.13.)

been considered. Professor Prosser suggests that the concept had often been considered " 'too subtle and speculative to be capable of admeasurement by any standard known to the law,' and so. evanescent, intangible, peculiar and variable with the individual as to be beyond prediction or anticipation; and the 'wide door' which might be opened, not only to fictitious claims, but to litigation in the field of trivialities and mere bad manners." (Prosser, *Insult and Outrage* (1956) 44 Cal.L.Rev. 40, 41-42; fns. omitted.) *Wynne v. Orcutt Union Sch. Dist.* (1971) 17 Cal.App.3d 1108 [95 Cal.Rptr. 458] concerned parents' claims for emotional distress attending a teacher's divulgence to classmates of their son that he was suffering from an incurable disease. The court said (p. 1111): "The illness of a child, the child's discovery that death may come sooner rather than later, the bruiting of this eventuality in the community, these events bring pain and sorrow to those affected. Yet this pain and sorrow, part of the human condition, remain outside the sphere of injury for which courts provide relief through monetary compensation." And it has elsewhere been authoritatively stated: "Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people." (Rest.2d Torts (1965) § 46, com. j, p. 77.)

But nevertheless it has been the judicial experience that while emotional distress is but "part of the human condition" and frequently the product of "trivialities and mere bad manners" of others, it will occasionally result in profound, even calamitous, consequences to the person concerned. California has adopted a rule which recognizes degrees of legal. culpability in the tortious infliction of emotional distress unattended by physical trauma. It will ordinarily deny judicial relief, but will nevertheless afford it in extreme cases and where reason dictates that it be granted.

The rule was tersely stated in *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 498 [86 Cal.Rptr. 88, 468 P.2d 216], in this manner:

"[C]ourts of this state have . . . acknowledged the right to recover damages for emotional distress alone, without consequent physical injuries, *in cases involving extreme and outrageous intentional invasions of one's mental and emotional tranquility.*" (Italics ours.)

This rule was articulated at length by the then Justice (later Chief Justice) Roger Traynor, of the state's Supreme Court, in *State Rubbish*

*etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330, 333-339 [240 P.2d 282], q.v. It was stated by *Cornblith* v. *First Maintenance Supply Co.* (1968) 268 Cal.App.2d 564, 565 [74 Cal.Rptr. 216] (quoting from *State Rubbish etc. Assn.* v. *Siliznoff, supra*), as follows: " 'Intentional infliction of emotional distress, without physical trauma, can be a ground of liability . . . but only when the defendant's conduct is "outrageous" . . . or "has gone beyond all reasonable bounds of decency" . . . .' " *Spackman* v. *Good* (1966) 245 Cal.App.2d 518, 528-529 [54 Cal.Rptr. 78], stated: "It is settled in California that the intentional infliction of severe mental or emotional distress or disturbance caused by wilful and outrageous conduct, in the absence of privilege, constitutes an actionable tort for which the victim may recover damages." "[U]nder California law . . . [where] the victim has suffered no physical harm but only mental distress, the defendant is liable only when his conduct is outrageous or has gone beyond all reasonable bounds of decency." (*Moore* v. *Greene* (9th Cir. 1970) 431 F.2d 584, 590.)

To the same effect see *Golden* v. *Dungan* (1971) 20 Cal.App.3d 295, 302-311 [97 Cal.Rptr. 577], and see authority there cited; *Aweeka* v. *Bonds* (1971) 20 Cal.App.3d 278, 281-282 [97 Cal.Rptr. 650]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 396-397 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; *Grimes* v. *Carter* (1966) 241 Cal.App.2d 694, 699-700 [50 Cal.Rptr. 808, 19 A.L.R.3d 1310]; *Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804, 808-809 [42 Cal.Rptr. 314]; *Perati* v. *Atkinson* (1963) 213 Cal.App.2d 472, 474 [28 Cal.Rptr. 898]; *Vargas* v. *Ruggiero* (1961) 197 Cal.App.2d 709, 718 [17 Cal.Rptr. 568]; *Guillory* v. *Godfrey* (1955) 134 Cal.App.2d 628, 633 [286 P.2d 474]; 4 Witkin, Summary of California Law (8th ed. 1974) Torts, sections 234-241, pages 2515-2522.

The same rule is stated in Restatement Second of Torts (1965) section 46, page 71, in this manner: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

The Restatement's equating of *reckless* with *intentional* extreme and outrageous conduct appears also to be embodied in the law of this state. (See *Spackman* v. *Good, supra,* 245 Cal.App.2d 518, 530; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 235, p. 2516, and see authority there cited.)

We have considered the several reported cases of this state in which damages for emotional distress were allowed, but where we find unmentioned the rule of *Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d 493, 498, that such damages are permitted only "in cases involving extreme and outrageous intentional [or reckless] invasions of one's mental and emotional tranquility." But an examination of those authorities indicates that generally the subject emotional distress was attended by some degree of physical injury; the general rule which we have noted (see fn. 2, *ante*) was thus applicable. And we note further that with near, if not complete, unanimity they dealt with factual contexts where the mental distress was triggered by what must reasonably be deemed intentional or reckless "extreme and outrageous conduct." A few illustrations: *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] concerned *physical injury* resulting from emotional trauma to a mother who saw her infant daughter struck and killed by an automobile. *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]. There the bad faith conduct of an insurance company proximately caused, among other things, "a decline in physical health, hysteria, and suicide attempts" of Mrs. Crisci. *Acadia, California, Ltd.* v. *Herbert, supra,* 54 Cal.2d 328, where the malicious shutting off of Herbert's water supply caused his wife's relapse into a mental illness requiring extensive medical treatment and hospitalization, and caused him mental suffering and loss of consortium. The circumstances were patently extreme and outrageous. *Herzog* v. *Grosso* (1953) 41 Cal.2d 219 [259 P.2d 429]. There a trespasser rendered the only means of access to a couple's home extremely hazardous, causing them emotional distress "and anxiety for the safety of themselves, their daughter, and their guests"; although there was no bodily injury, the trespasser's conduct may also reasonably be deemed intentional, extreme and outrageous.

No contrary conclusion was reached in *Vanoni* v. *Western Airlines, supra,* 247 Cal.App.2d 793. There we found the plaintiff to have pleaded that *physical injuries* resulted from the defendant's alleged tortious conduct, and that his complaint accordingly stated a cause of action. Nor is *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844 [88 Cal.Rptr. 39] in any way contrary to the rule we have iterated. There a special circumstance, known to the bailee, was that the subject of the parties' bailment agreement, certain old family jewelry, had a sentimental value far in excess of what might be called its market value. We accordingly gave effect *to the parties' agreement* and found the jury entitled "to

include in the damages recoverable for the loss of the rings by reason of defendant's negligence, damages for physical suffering or illness proximately resulting from such loss, in addition to the damages sustained because of the actual loss." (P. 852.) (See Civ. Code, § 3300.)

Nor is the recent case of *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470] at odds with the rule we have discussed. There, in a context closely similar to that of *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, the reviewing court concluded that "the jury impliedly found that the emotional distress suffered by the plaintiffs was caused by the defendant's negligence and bad faith and the resultant worry and anguish flowing from Transamerica's utter failure to provide a good title or to do anything to correct its errors in connection with the search it made, the preliminary report it prepared, and the policy it issued." (P. 932.) This finding, we opine, was tantamount to a finding of an extreme and outrageous intentional or reckless invasion of the plaintiffs' mental and emotional tranquillity. (See *Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d 493, 498.) The evidence supported that finding, and the award for emotional distress to the plaintiffs of the case was accordingly proper.

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." (Rest.2d Torts (1965) § 46, com. h, p. 77.) Or as said in *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, 397: " 'It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.' " (See also *Cornblith* v. *First Maintenance Supply Co., supra,* 268 Cal.App.2d 564, 565.)

■    Having considered the evidence upon which plaintiffs based their contention of emotional distress, we are of the opinion that it may not reasonably be deemed to disclose "extreme and outrageous intentional [or reckless] invasions of [their] mental and emotional tranquility," according to *Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d 493, 498. It follows that insofar as the judgment awards damages for emotional distress, it was erroneously entered.

Plaintiffs point out that a partial reporter's transcript has been filed with this court and that the remaining record *might* disclose matters such as that defendants had "demonstrated without a possible doubt that the Perezes had intentionally set out to destroy the Fuentes and that they had plotted and planned out this entire set of events for the sole purpose of creating the emotional distress caused by their conduct and that this made them feel good to see others suffer at their hands, especially the Fuentes." But we observe that the action sounded only in breach of contract and negligence, thus eliminating the possibility, or at least the admissibility, of such other evidence.

The superior court will modify the judgment by striking therefrom the respective awards to Joseph Fuentes and Lorraine Fuentes for emotional distress, of $8,000 and $2,000; as so modified the judgment is affirmed. Defendants will recover their costs of appeal.

Molinari, P. J., and Sims, J.; concurred.

A petition for a rehearing was denied February 16, 1977, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied March 24, 1977.