[Civ. No. 28559. Fourth Dist., Div. One. Jan. 10, 1985.]

COMMERCIAL COTTON COMPANY, INC., et al.,
Plaintiffs and Respondents, v.
UNITED CALIFORNIA BANK, Defendant and Appellant.

512

**COUNSEL**

James W. O'Neil, Dennis D. Slattery, Severson, Werson, Berke & Melchior and Jan T. Chilton for Defendant and Appellant.

Ewing, Kirk & Johnson, Ewing, Johnson, Macklin & Stamper, Richard C. Stamper, C. Delos Putz, Jr., and Alan J. Titus for Plaintiffs and Respondents.

**OPINION**

**WORK, J.**—United California Bank (UCB) appeals a judgment in favor of Commercial Cotton Company, Inc. and its principal shareholder, Travis H.

Calvin, Jr., awarding them $4,000 for negligently debiting Commercial Cotton's commercial checking account in that amount on a check containing unauthorized signatures, $20,000 for intentionally inflicting emotional distress by unjustifiably refusing to repay Calvin the loss sustained by its error, and $100,000 punitive damages because UCB breached the implied covenant of good faith and fair dealing inherent in the contractual relationship with its depositor.

UCB admits it negligently debited the bank account for a check plainly containing unauthorized signatures, but contends no substantial evidence supports a finding Calvin suffered compensable emotional distress from its refusal to reimburse. UCB further argues it did not breach its duty of good faith and fair dealing because it legitimately pursued its economic interest by raising what it perceived as legitimate defenses in refusing to reimburse the loss its negligence caused. We find no substantial evidence supports the award of damages for emotional distress, but affirm the rest of the judgment.

## Factual Background

Since approximately 1972, Commercial Cotton's noninterest bearing commercial checking account at UCB (Calexico branch) was essentially dormant, with only two or three checks a month being written. Calvin is a neurosurgeon practicing in El Centro, California, and since at least 1972 has been the sole signatory on that account which in prior years had been an active conduit for transactions relating to cotton ginning and cotton sales.

In 1972, Calvin's wife reported the loss of a series of blank checks to UCB and received a new number series in a different style and color. She did not report the checks stolen because she believed they only had been inadvertently discarded.

Four years later, August 1976, one of the missing checks in the amount of $4,000 containing two unauthorized signatures was negligently paid by UCB.

Although Commercial Cotton's monthly bank statements for September 1976 listed the $4,000 unauthorized transaction, Calvin did not read the statement or discover the loss until March 1978. He promptly presented the faulty check to the manager of the Calexico UCB branch who admitted the bank had erred but refused to reimburse Calvin on advice of UCB's in-house counsel who stated the claim was barred by a one-year statute of limitations. (Cal. U. Com. Code, § 4406, subd. (4), and Code Civ. Proc., § 340, subd. (3).)

When Calvin renewed his claim through his attorney, on July 31, 1978, the bank's general counsel denied the claim by letter on the same grounds.

However, on July 20, 11 days before the date of the general counsel's letter, the California Supreme Court, in a landmark decision directly involving UCB, expressly held these one-year statutory limitations do not apply where a customer sues a bank for negligent conduct. The holding of *Sun 'N Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671, 699 [148 Cal.Rptr. 329, 582 P.2d 920], confirms the one-year limitations in California Uniform Commercial Code section 4406 applies only to warranty actions and holds the three-year statute of limitations for general negligence actions applies where, as here, the customer alleges a breach of duty.

■ We find it inexplicable that UCB's general counsel could have been unaware of the Supreme Court holding affecting the bank for which he was general counsel at the time he wrote the July 31 letter. However, he later admitted these statutory bars were not applicable but, without stating reasons for his belief, still advised "notwithstanding the foregoing decision [*Sun 'N Sand*] it is our opinion [Commercial Cotton] would be required to prove its case on the merits and we believe that the factual issues would be resolved in favor of United California Bank." UCB's "hard line" is unsupported by any reasonable analysis of the known facts. The letter was written following receipt of a memorandum from a staff attorney suggesting, although the check was drawn on an outdated form and did not contain authorized signatures, UCB "may argue that as a result of fully automated check processing, very few signatures are actually examined before payment and that this is a reasonable commercial practice."[1]

■ Further, the memorandum suggested UCB might "be allowed to diminish any liability on its part" by proving comparative negligence on the part of the depositor. However, although a tortfeasor may diminish the amount of damages he or she must pay by the proportionate share of fault for which the victim is responsible, that doctrine is factually inapplicable here. At trial, the only contention regarding comparative negligence was that the bank was never told there were missing checks. ■ Plaintiffs' evidence is contrary and, on appeal, we view the evidence in the light most favorable to the prevailing party. ■ The further claim, originally made but not presented at trial, that Calvin was negligent in not discovering the loss for one and one-half years when, had he examined his September 1976 bank statement he would have been able to notify the bank of the loss approximately one month after it occurred, is irrelevant to the issue of comparative negligence. The delay in reporting had nothing to do with the bank negligently paying the $4,000 unauthorized check. The delay in discovery and reporting the loss to UCB did not contribute to the transaction.

---

[1]It is noteworthy that this "defense" was not pursued at time of trial and UCB conceded it negligently paid the check.

Calvin's after-the-fact conduct did not contribute to UCB's negligence in making the $4,000 unauthorized payment.

## Covenant of Good Faith and Fair Dealing

■■■ UCB acknowledges the tort of breach of the covenant of good faith and fair dealing is not limited to insurance cases but claims the "special relationship" that must exist before a tort action will arise does not exist here.

In the context of an insurance contract the Supreme Court emphasized the relationship between insurer and insured, characterized by elements of public interest, adhesion, and fiduciary responsibility created the necessary special relationship. (See *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820 [169 Cal.Rptr. 691, 620 P.2d 141].) In *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co. of California, Inc.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158], the Supreme Court found it unnecessary to determine how far, if at all, the doctrine should extend to ordinary commercial contracts where parties of "roughly equal bargaining power are free to shape the contours of their agreement . . . ." (*Id.,* at p. 769.)

Analogizing to the factors set out in *Egan* we agree with Calvin's contention that banking and insurance have much in common, both being highly regulated industries performing vital public services substantially affecting the public welfare. A depositor in a noninterest-bearing checking account, except for state or federal regulatory oversight, is totally dependent on the banking institution to which it entrusts deposited funds and depends on the bank's honesty and expertise to protect them. While banks do provide services for the depositor by way of monitoring deposits and withdrawals, they do so for the very commercial purpose of making money by using the deposited funds. The depositor allows the bank to use those funds in exchange for the convenience of not having to conduct transactions in cash and the concomitant security in having the bank safeguard them. The relationship of bank to depositor is at least quasi-fiduciary, and depositors reasonably expect a bank not to claim nonexistent legal defenses to avoid reimbursement when the bank negligently disburses the entrusted funds. Here, UCB's claimed defenses are spurious, and the jury found experienced legal counsel interposing them in an unjustifiable, stonewalling effort to prevent an innocent depositor from recovering money entrusted to and lost through the bank's own negligence, is a breach of the bank's covenant of good faith and fair dealing with its depositor. Viewing the evidence in a light most favorable to the verdict, we hold it is overwhelmingly supported by the evidence.

## Emotional Distress

■■■ However, the evidence does not support a finding Calvin suffered compensable emotional distress. Calvin testified, but not on this issue. The

only relevant evidence was through his lawyer stating Calvin told him on the telephone he was "angry and that he felt he was being given a run around and . . . it appeared to [the witness] that he was aggravated and irritated and upset about it." UCB equates characterizations of Calvin's emotional state to allegations pleaded in *Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163 [136 Cal.Rptr. 275], where plaintiffs testified they were upset, disturbed and furious, incorrectly claiming the appellate court in *Fuentes* held such emotional states do not qualify as compensable emotional distress. In fact, *Fuentes* directed its attention to distinguishing the type of misconduct allowing a plaintiff to recover damages for physical injuries or emotional injuries accompanied by physical harm from the type of conduct permitting recovery where the damage is only to one's mental and emotional tranquility. *Fuentes* did not attempt to analyze the sufficiency of the evidence on the severity of the mental and emotional distress itself, our issue here.

■ However, while damages for emotional distress unaccompanied by physical injury may be awarded in a tort action arising out of a breach of a covenant of good faith and fair dealing, the injuries suffered must be severe, i.e., substantial or enduring as distinguished from trivial or transitory. (*Young* v. *Bank of America* (1983) 141 Cal.App.3d 108, 114 [190 Cal.Rptr. 122].) ■ Here, the jury was properly instructed it could not permit recovery of damages for transitory and trivial emotional distress alone. (BAJI No. 12.70, as modified.) Transitory is defined as "[e]xisting or occurring only briefly; short-lived; passing." (The American Heritage Dict. (New College ed. 1979) p. 1364, col. 1.) Calvin had the burden of proof of showing by a preponderance of the evidence that the emotional disturbances perceived by his lawyer during one or more telephone conversations were anything other than short-lived. While jurors may empathize with Calvin, the law recognizes none of us are identical or react identically to given situations. ■■■ The evidence is insufficient as a matter of law to sustain the award for emotional distress.[2]

---

[2]We recognize exemplary damages ordinarily cannot be assessed without a showing plaintiff sustained actual damages from defendant's wrongful conduct, although only nominal actual or compensatory damages are required. (*James* v. *Public Finance Corp.* (1975) 47 Cal.App.3d 995, 1000 [121 Cal.Rptr. 670].) Further, absent a jury verdict expressly providing recovery of compensatory damages, punitive damages may be awarded where (1) actual damages are presumed as a matter of law (see *Clark* v. *McClurg* (1932) 215 Cal. 279, 282-284 [9 P.2d 505, 81 A.L.R. 908]; *Conterto* v. *Mitchell* (1972) 28 Cal.App.3d 356, 357-359 [104 Cal.Rptr. 591]), or (2) the evidence establishes an actionable wrong committed by defendant and resulting damages, not necessarily "bottomline damages," incurred by plaintiff (see *Werschkull* v. *United California Bank* (1978) 85 Cal.App.3d 981, 1002-1004 [149 Cal.Rptr. 829]; *Weiss* v. *Blumencranc* (1976) 61 Cal.App.3d 536, 542-544 [131 Cal.Rptr. 298]; *Esparza* v. *Specht* (1976) 55 Cal.App.3d 1, 6 [127 Cal.Rptr. 493]; *James* v. *Public Finance Corp., supra,* at pp. 1004-1006; *Topanga Corp.* v. *Gentile* (1967) 249 Cal.App.2d 681, 691 [58 Cal.Rptr. 713]). Here, the record shows as a matter of law UCB's breach of its covenant of good faith and fair dealing to Commercial Cotton caused it and its principal (Dr. Calvin) actual damages in an unspecified amount, including the loss of use of the $4,000 improperly withheld for several years (compare *Werschkull* v. *United*

## No Reversibly Prejudicial Error Occurred by Admitting the Comprehensive Financial Summary

■ Finally, the bank claims it was prejudiced on the issue of punitive damages when Calvin introduced the annual report of UCB's parent company, First Interstate Bancorp., into evidence and argued First Interstate's annual net profit of $236 million was in fact the operating profit of its subsidiary, UCB.[3] Although the exhibit, admitted into evidence, actually shows UCB's net operating profit was only $127,497,000, it correctly, but somewhat ambiguously, segregates the net profits of the subsidiaries and a juror correctly reading it could arrive at an accurate figure. In any event, UCB's counsel discovered the purported discrepancy and brought it to the court's attention before his final jury argument. He elected not to alert the jury to any possible misstatements about UCB's net worth in plaintiff's argument or to attempt to avoid any potential prejudice. Further, defense counsel did not object to the exhibit at the time of its admission. To the extent that plaintiff's counsel had incorrectly referred to UCB's annual net earnings as $236 million, UCB waived redress when it asked only for a mistrial for improperly admitting the exhibit and never asked the court to correct the supposed misrepresentations and, when given the opportunity to do so itself, elected to forego it.

The judgment is modified by striking the award for emotional distress and, as modified, is affirmed.

Brown (Gerald), P. J., and Wiener, J., concurred.

Petitions for a rehearing were denied January 29, 1985, and on February 8, 1985, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied March 28, 1985. Lucas, J., was of the opinion that the petition should be granted.

---

*California Bank, supra,* 85 Cal.App.3d at pp. 1002, 1004), and derivable income, and expenses incurred following the breach to obtain restitution (i.e., costs of litigation). Accordingly, our reversing the emotional distress damages award does not affect the validity of the exemplary damage verdict.

[3]UCB has now changed its name to First Interstate Bank of California.