[Civ. No. 33132. First Dist., Div. One. May 7, 1975.]

VERNON JAMES, Plaintiff and Appellant, v.
PUBLIC FINANCE CORPORATION et al.,
Defendants and Respondents.

**COUNSEL**

Barry R. Hirschfield, and Van Bourg, Allen, Weinberg, Williams & Roger for Plaintiff and Appellant.

Ericksen, Ericksen, Lynch & Mackenroth and Randall K. Scott for Defendants and Respondents.

## OPINION

**LAZARUS, J.**\*—This is an action to recover damages for three alleged wrongful garnishments against plaintiff's wages based upon a judgment of the small claims court procured by a fraudulent return of service of summons.

A jury returned a verdict on a typewritten form which purported to be in favor of plaintiff-appellant, but in assessing damages the following figures were filled in by the forelady:

"For general damages the sum of $0

"For punitive damages the sum of $1,750.00."

Thereafter the trial judge granted a motion by defendants to vacate the judgment entered on the verdict under the provisions of Code of Civil Procedure section 663. His order granting the motion directed the entry of a new and different judgment against defendants ". . . in the amount of ZERO DOLLARS ($00.00) General, Compensatory Damages." The order also awarded costs to defendants.

As grounds for reversal, appellant contends: 1. The rule that a verdict for zero compensatory damages will nullify an award of punitive damages should not apply in a case such as this where the existence of a tortious act resulting in some actual damages manifestly appears from the evidence; 2. the verdict for zero general damages was a general verdict and not a special finding of fact within the meaning of section 663 of the Code of Civil Procedure, and the judgment entered thereon was not one that could be therefore vacated under that section, but only by a motion for a new trial.

The second proposition obviously becomes moot, however, if appellant is entitled to a reversal on the first ground. But before we reach what may ultimately be the decisive question in this case, we must initially refer to the factual circumstances upon which the answer to this question must necessarily rest.

Appellant Vernon James purchased some items of furniture from White Front Oakland, Inc. in 1968 at a time sale price of $538.83,

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

payable in 24 monthly payments, the first of which was to become due in February 1969. The account was financed by respondent Public Finance Corporation, to whom the account was assigned by White Front. The payments that became due from February to August 1969 were made, but thereafter payments were skipped for several months. James says that this was because of a dispute over the quality of the merchandise, but admits he was also behind in his payments to other creditors. A final payment on the White Front account was made by James on January 29, 1970, although there is a dispute as to whether or not the latter payment was returned to him by the finance company.

In any event Public Finance Corporation had in the meantime filed suit on January 21, 1970, in the small claims court for the accrued balance of the purchase price plus finance charges under an acceleration clause in the contract, waiving any excess over $300 to come within the jurisdictional limits of that court.

James was served with summons in the small claims action by respondent J. Gaylord, a collector for Public Finance Corporation. In his affidavit of service Gaylord stated under penalty of perjury that the process was served on James personally on February 9, 1970, at 9527 Coral Road, Oakland. He admitted in his testimony at the trial, however, that this affidavit was false, and that the papers had in fact been slipped under the doorway of the premises. James testified that he had moved away from that address in July of 1969 and had notified respondent of his new address at that time by telephone and also by a post office change of address card. Respondents' records reflected this change of address, but they were unable to say when the corrected address had been entered.

On the basis of this false affidavit, Public Finance Corporation obtained a default judgment against James for $300 and $2 costs on February 17, 1970.

Thereafter, starting in April 1970, James' wages from his employer, Garrett Freightlines, were garnished on three separate occasions. Since his paychecks came from his employer's Los Angeles office, he had difficulty however in ascertaining who the attaching creditor was. He testified that it took him two or three weeks of investigation to find out. As a result he became emotionally disturbed and because of his anxiety, his ability to do his work was materially affected.

His apprehension was particularly acute because of the fact that the collective bargaining contract between his employer and the union to which he belonged provided that he might be discharged if his wages were garnished on three or more occasions. He was warned about this by a letter dated April 16, 1970. In the same letter he was also notified specifically for the first time, according to him, about the Public Finance Corporation's judgment. To forestall a fourth garnishment, appellant took a week off from work without pay, sustaining a wage loss of $271.99.

After he found out about the Public Finance Corporation suit, he promptly filed a motion to set aside the judgment in the small claims court, which was granted. Thereafter a second judgment in favor of Public Finance Corporation for $85 was rendered in the small claims action. The amount was apparently arrived at by deducting $215 which had been withheld from his wages due to the garnishments from the maximum amount that could be awarded in the small claims court.

James subsequently commenced this action in the superior court in which White Front Oakland, Inc.,[1] Public Finance Corporation and J. Gaylord were joined as defendants on December 7, 1970. The gist of his complaint was that defendants had acted intentionally, wilfully, recklessly and maliciously in using a false affidavit of service to procure the original small claims judgment and the issuance of a writ of execution thereon. Damages were claimed for $271.99 for the wages he lost during the time required to clear up the matter, $10,000 for emotional distress, and $50,000 punitive damages. The trial of this law suit was before a jury which returned the ambiguous verdict that gave rise to the present dispute.

■ At the outset we are therefore confronted with a case in which the tortious act (the use of a false affidavit to garnishee appellant's wages) has been admitted. That this resulted in at least nominal damages, including the wage loss and some degree of emotional distress is undeniable from the evidence in this case. Must it therefore be that the jury's verdict in favor of the appellant was nullified merely because the digit that the forelady inserted in the blank space for general damages in the form with which she was provided was a zero?

---

[1]James stipulated to a dismissal with prejudice as to White Front Oakland, Inc. prior to trial.

Looking to the authorities for guidance, we find no California cases involving similar facts in which the precise point has been heretofore considered. ■ We start therefore by taking cognizance of the well established rule in this state and elsewhere[2] that exemplary damages cannot ordinarily be assessed without a showing by the plaintiff as a prerequisite that he has sustained actual damages from defendant's wrongful act.[3] (*Clark* v. *McClurg,* 215 Cal. 279, 282 [4 P.2d 149, 9 P.2d 505, 81 A.L.R. 908]; *Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 801-802 [197 P.2d 713]; *Finney* v. *Lockhart,* 35 Cal.2d 161, 163 [217 P.2d 19]; 25 C.J.S., Damages, § 118, p. 1121.) But this does not mean that for that purpose actual or compensatory damages need be more than nominal (*Muller* v. *Reagh,* 150 Cal.App.2d 99, 101 [309 P.2d 826]), and the compensatory damages allowable in a case of this kind include mental suffering. (*Spellens* v. *Spellens,* 49 Cal.2d 210, 233 [317 P.2d 613]; *Czap* v. *Credit Bureau of Santa Clara Valley,* 7 Cal.App.3d 1 [86 Cal.Rptr. 417].)

■ Respondents however seem to rely on a corollary to the general rule followed in some jurisdictions, that there must be an *express finding by the trial court that there were actual damages in some specified amount* before punitive damages might be awarded.

In this regard, the authorities here and in other states were in sharp disagreement before the Supreme Court's decision in the leading case of *Clark* v. *McClurg, supra,* 215 Cal. 279. However, the conflict seems to have been resolved insofar as the law of this state is concerned by that decision. The *Clark* court reasoned that the general rule requiring plaintiff to show that he has sustained actual damages is solely because he must prove that the defendant has committed a "tortious act" before he may be entitled to recover exemplary damages. (*Id.* at p. 282.) To establish that there was a "tortious act," plaintiff must, of course, prove not only the existence of an actionable wrong, but also that damages resulted therefrom. (*Palmer* v. *Crafts,* 16 Cal.App.2d 370, 375 [60 P.2d 533]; *Coleman* v. *California Y. Meeting, etc.,* 27 Cal.App.2d 579, 582 [81 P.2d 469]; *Erlich* v. *Etner,* 224 Cal.App.2d 69, 73-75 [36 Cal.Rptr. 256]; 47 Cal.Jur.2d, Torts, § 4, p. 696.) The concurrence of both an actionable

---

[2] This does not appear to be the rule in the federal courts. (See *Basista* v. *Weir* (3d Cir. 1965) 340 F.2d, 74, 87-88; *Gill* v. *Manuel* (9th Cir. 1973) 488 F.2d 799, 802.)

[3] The rule also seems to be implicitly recognized by statute in section 3294 of the Civil Code, providing that in the class of actions referred to in the statute "... the plaintiff, *in addition to the actual damages,* may recover damages for the sake of example and by way of punishing the defendant." (Italics added.)

wrong and damages are necessary elements for a cause of action. Exemplary damages, where recoverable, are deemed to be " '. . . mere incidents to the cause of action and . . . [not] the basis thereof.' " (*Clark* v. *McClurg, supra,* at p. 282.)

The logic upon which the *Clark* decision rested would seem to be most apposite here. It involved an action for defamation based upon statements that were respectively slanderous and libelous per se. A jury reached a verdict in the following form: " ' "We, the jury in the above-entitled action, find for the plaintiff and assess her damages in the sum of ...... ($......) Dollars as actual damages and the sum of Five Thousand ($5,000.00) Dollars as punitive damages, making a total of Five Thousand ($5,000.00) Dollars, this 20th day of September, 1928." ' " (*Clark* v. *McClurg, supra,* 215 Cal. 279 at p. 281.)[4]

In its opinion sustaining the validity of the verdict and the judgment based thereon, the Supreme Court agreed with respondent that there is a conclusive presumption in actions for damages for the publication of defamatory statements that are slanderous or libelous per se that there were actual damages, even though there may be no evidence as to the existence of such damages. On this premise the court therefore reached the following inquiry: " 'Actual damages being shown, it becomes essential to determine whether the money extent thereof must be found in order to sustain a finding of punitive damages. Upon this proposition the decisions are in hopeless conflict. (8 R.C.L. 593, sec. 137; 33 A.L.R. 384-417; 2 Sutherland on Damages, 1321-1327, sec. 406.)' " (*Clark* v. *McClurg, supra,* 215 Cal. 279 at p. 282.)

The court was unable to find from its research that there were any California cases in which the point was directly involved. It was therefore obliged to turn to the authorities elsewhere. It appeared from this analysis that there was a split of authority. In the decisions of some states there must be a clear and definite *finding* by the trial court that there were actual damages and also the amount thereof as a predicate for an award of exemplary damages.[5] *Clark* rejected this rule, however, and

---

[4]The verdict in that case is therefore distinguishable in form from the one which is here involved only in that the *Clark* jury made no finding at all as to compensatory or actual damages, awarding only punitive damages. If the forelady had not inserted any figure in the blank space, the instant verdict would, of course, have been almost identical with the verdict returned in the *Clark* case.

[5]Included in this line of cases is *Gilham* v. *Devereaux,* 67 Mont. 75 [214 P. 606, 33 A.L.R. 381], cited and followed in *Haydel* v. *Morton,* 8 Cal.App.2d 730 [48 P.2d 709], to be discussed and distinguished herein at pages 1003 to 1005.

adopted the contrary rule in other jurisdictions; namely, if actual damages are *shown,* there need be no finding either as to the existence or monetary extent of such damages to support an award of punitive damages. It therefore concluded that " '. . . where, as here, the publication is slanderous or libelous *per se,* and is false and unprivileged, a cause of action for actual or compensatory damages is conclusively established. [Citations.] Respondent must, therefore, be held to have established her right to compensatory damages, and the fact that the jury, inadvertently or by some mischance, assessed the entire damages as exemplary, instead of segregating them, constitutes an error of form rather than of substance.' " (*Clark* v. *McClurg, supra,* 215 Cal. 279 at p. 284.)

Following *Clark,* the same result was reached more recently by the Court of Appeal in another slander per se case, *Contento* v. *Mitchell,* 28 Cal.App.3d 356 [104 Cal.Rptr. 591], cited by appellants. In a nonjury trial, the judge awarded plaintiff $3,000 damages, but expressly stated in his conclusions of law that the $3,000 was punitive damages. (*Id.* at p. 357.) Affirming the judgment, the appellate court aptly stated: ". . . the only function of nominal damages is to indicate that the finder of fact has determined that the plaintiff has suffered an invasion of a legal right. If plaintiff's legal right has been invaded, an award of nominal damages is an idle formalism." (*Id.* at p. 359.)

If the judge in *Contento,* who presumably was familiar with the law, had the authority to assess punitive damages alone, expressly holding that nothing was to be allowed by way of actual damages, why not the jury that decided this case?

True, these were cases in which damages were presumed as a matter of law. But *Topanga Corp.* v. *Gentile,* 249 Cal.App.2d 681 [58 Cal.Rptr. 713], (not cited by either party) followed the same principles in a case in which compensatory damages were neither presumed nor sought. That was an action by a corporation seeking equitable relief (including reformation and cancellation of shares of stock) from alleged fraudulent transactions in which the defendant stock promoters were involved. Plaintiff's complaint also prayed for punitive damages.

After a trial before the court without a jury, the trial judge rendered his judgment in favor of plaintiff for the equitable relief prayed for, but denied punitive damages. This was not because the facts did not warrant

it. The trial judge never reached that question, concluding in his memorandum decision that since money damages were not being sought, he had no jurisdiction to allow punitive damages.

In this respect the trial court erred, said the appellate court. Holding that if the aggrieved party shows that he was damaged by an actionable wrong it need not be compensable in money, the court reasoned as follows: "Defendants argue that exemplary damages are not recoverable because plaintiff was not granted compensatory damages. However, the fact that plaintiffs were not given a grant of monetary damages of a certain amount is not determinative. Plaintiff was indeed damaged by defendants' fraud for defendants had, as the result of the fraud, received stock in an amount not commensurate with the value of their contribution to the corporation. To remedy this, the trial court in effect ordered defendants to surrender that part of their sharehold interest which exceeded their true capital contribution. [¶] The requirement of 'actual damages' imposed by section 3294 is simply the requirement' that a tortious act be proven if punitive damages are to be assessed." (*Topanga Corp.* v. *Gentile, supra,* 249 Cal.App.2d 681 at p. 691.)

The judgment was affirmed as to all grounds except the one involving punitive damages. As to that issue, the case was remanded to the trial court with directions to determine whether punitive damages should be awarded, and if so, the amount thereof.

The rationale of these cases would seem to apply with the same irrefutable force here. But there is one obstacle in the way of authority that must be overcome if appellant is to prevail. This is the frequently cited case of *Haydel* v. *Morton,* 8 Cal.App.2d 730 [48 P.2d 709], relied upon by respondent, in which it was held that a verdict for $.00 compensatory damages would not support an award of punitive damages.

That case arose out of the prosecution of the plaintiff for the alleged misappropriation of funds from the hospital by which he was employed. It involved three counts, one for malicious prosecution and the other two for alleged slander. The verdict on the first count was for compensatory damages of $14,000 and exemplary damages of $25,000, making a total of $39,000. But as to the two slander counts, the jury returned separate but identical verdicts " '. . . for the plaintiff and against the defendant on said count and assess compensatory damages in the sum of

$00; we assess the exemplary damages at $10,000; making a total verdict for the plaintiff in the sum of $10,000.' " (*Haydel* v. *Morton, supra,* 8 Cal.App.2d 730 at p. 736.) On a motion for a new trial, the verdict on the malicious prosecution count was allowed to stand, but a new trial was granted as to the two slander counts. The appeal was from the latter order.

The appellate court affirmed the order, holding that *Clark* v. *McClurg, supra,* 215 Cal. 279, did not require a contrary decision since the jury "did not 'inadvertently or by some mischance omit to assess the compensatory damages', but it 'expressly found and determined' that plaintiff 'had *not* suffered any actual damages'." (*Haydel* v. *Morton, supra,* 8 Cal.App.2d 730 at p. 737.)

This is nevertheless a decision that cannot be ignored because of the likeness in form of the verdicts that were determined to be defective and without legal effect in that case to the verdict with which we are here concerned. That decision must rest upon its own facts and circumstances, however, and except as to the similarity in the verdict forms, we believe that any superficial resemblance between the two cases ceases.

First, there was no finding or clear showing that actual damages were in fact sustained in *Haydel,* and consequently there was no proof that there was a "tortious act" as a prerequisite for the recovery of punitive damages.

Furthermore, since the jury in that case awarded both compensatory and punitive damages in specified amounts in its verdict in plaintiff's favor in connection with the cause of action for malicious prosecution, the award of zero compensatory damages as to the slander counts would appear to be intentional, and not due to inadvertence or misunderstanding.

Finally we believe that the rationale of the Supreme Court's decision in *Clark* was misconstrued or overlooked by the *Haydel* court. Thus, one of the authorities that the court apparently attached great significance to in reaching its decision was the 1926 Montana case of *Gilham* v. *Devereaux,* 67 Mont. 75 [214 P. 606, 33 A.L.R. 381]. In this connection, the following statement appears in *Haydel* at page 736 of its opinion: "Numerous authorities have been cited in which verdicts for compensatory or actual damages had read 'nothing' or 'none'. In such cases it has

been uniformly held that the award of punitive or exemplary damages could not be upheld. [Citing a list of out of state authorities, headed by *Gilham* v. *Devereaux.*]"

But *Gilham* is the same case that was quoted by the Supreme Court in *Clark* as an example of one of two conflicting lines of decision, the one following the rule that there must be a *finding* of actual damages as a predicate for exemplary damages.[6] However, the Supreme Court in *Clark,* as we have seen, refused to follow this rule, adopting the contrary rule in other states that actual damages need only be *shown* as the law of California.

Moreover, whatever weight the decision in *Gilham* may have once had as authority, it has now been twice reversed and put to final rest by the Montana courts in *Fauver* v. *Wilkoske* (1949) 123 Mont. 228 [211 P.2d 420 17 A.L.R.2d 518], and *Brown* v. *Grenz* (1953) 127 Mont. 49 [257 P.2d 246]. Both of these cases involved verdicts in which the word "none" had been written in a space provided for compensatory damages, followed by an assessment of punitive damages.

*Fauver* is of special interest here because the Montana court quoted extensively from the California Supreme Court's opinion in *Clark,* basing its own conclusions squarely on that case. (*Fauver* v. *Wilkoske, supra,* 211 P.2d at pp. 424-425.)

And in adopting the more modern rule as the present law of Montana, the court in *Brown* pertinently concluded: "Where, as here, actual damages appear from the evidence, an award of punitive or exemplary damages will stand, though the verdict of the jury shows no finding of actual damages. [Citations.]" (*Brown* v. *Grenz, supra,* 257 P.2d at p. 248.)

It should also be mentioned that at no time before the discharge of the jury in the case at bar was the sufficiency of the verdict questioned by anyone, and the verdict was accepted without comment or further instructions. Apparently the court and counsel believed at that time that James had won his lawsuit and was entitled to damages in the sum of $1,750.

Although BAJI instruction 14.71 as to when punitive damages may be allowed was given, jurors are not of course versed in the niceties of legal

---

[6]This conflict in the authorities has been heretofore discussed at page 1001.

jargon and its many subtle distinctions, and they may have understandably been confused. Had a further explanation been given when they returned with the verdict that they did, it is most probable that any difficulties resulting therefrom would have been avoided.

The verdict in this case should therefore be liberally construed as a general verdict covering all of appellant's damages, both actual and punitive, and should not be negated because of a technical defect in form. (*Clark* v. *McClurg, supra,* 215 Cal. 279 at p. 285.) Accordingly, the trial court's judgment, and its order vacating the judgment entered upon the jury's verdict is reversed and the matter is remanded to the trial court with directions to enter judgment in favor of plaintiff-appellant and against defendants-respondents in the single sum of $1,750 as damages, both actual and punitive, together with his court costs.

Molinari, P. J., and Elkington, J., concurred.