[No. B048506. Second Dist., Div. Seven. Apr. 29, 1992.]

KINSEY JACKSON, Plaintiff and Respondent, v.
CHARLES B. JOHNSON, Defendant and Appellant.

COUNSEL

Charles B. Johnson, in pro. per., for Defendant and Appellant.

Girardi, Keese & Crane and Robert W. Finnerty for Plaintiff and Respondent.

OPINION

**WOODS (Fred), J.**—We hold that a legal malpractice complaint alleging only simple negligence and a "0 dollars" actual damages verdict cannot support an award of punitive damages.

FACTUAL AND PROCEDURAL BACKGROUND

Kinsey Jackson (respondent) began working for Airco Welding Products on June 1, 1976. He filled and tested gas cylinders. By 1982 he was a lead

man earning $9.85 an hour. In April 1982 respondent was trying to acquire a class I driver's license to transport hazardous materials. But on June 22, 1982, respondent was terminated by Airco Welding Products and later that year the company "shut down."

On about December 23, 1982, respondent's application to Airco Industry & Gases (Airco) for a bulk liquid driver position, paying $12 an hour, was rejected.

On January 6, 1983, respondent filed a discrimination charge with the California Department of Fair Employment & Housing (F.E.H.A.) claiming Airco's December 23, 1982, rejection of his job application was racially motivated.

On January 20, 1983, respondent withdrew his F.E.H.A. discrimination charge against Airco.

Around February 1, 1983, respondent and Charles B. Johnson, appellant, met in appellant's law office. They agreed to a retainer of $500.[1] Respondent gave appellant $200 in cash.

On November 22, 1983, appellant filed on respondent's behalf an employment discrimination complaint against Airco. The complaint was based upon Airco's December 23, 1982, rejection of respondent's application for a bulk liquid driver position. Appellant made no effort to serve the complaint.

During the next three years the relationship between appellant and respondent consisted of an exchange of letters.[2] In them appellant demanded the $300 retainer balance and indicated he would do nothing until he received it. Respondent variously promised to pay the $300, denied $300 was owed, and demanded copies of his file.

On Saturday, December 13, 1986, respondent telephoned appellant and demanded to pick up his file the next day. On Sunday, December 14, 1986, appellant gave respondent his case file.

More than six months later, on May 19, 1987, appellant informed respondent that unless he proceeded with the action the presiding judge of the superior court would dismiss the case.

---

[1] Apparently there was no written retainer agreement. None is claimed and the record does not contain one.

[2] On February 27, 1984, there was a perfunctory personal contact, with respondent obtaining a "To Whom It May Concern" letter.

About a month and a half later, on July 9, 1987, the superior court dismissed respondent's complaint against Airco. (Code Civ. Proc., § 583.210.[3])

On November 20, 1987, respondent filed the instant action, a legal malpractice complaint. Appellant answered. On July 27, 1988, respondent filed a superseding complaint, a first amended complaint, alleging not only a legal malpractice cause of action but also one for deceit. Appellant answered.

At the conclusion of a trifurcated jury trial—the description of which we defer to the Discussion portion of this opinion—respondent was awarded $20,000 punitive damages.

## DISCUSSION

1. *Appellant contends the jury erred in finding that he entered into a retainer agreement with respondent.*

The evidence of an attorney-client relationship between appellant and respondent was in conflict. Considering our disposition of appellant's other contentions, it suffices to state, without elaboration, that substantial evidence supports the jury's finding such a relationship existed. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 281, p. 293.)

2. *Appellant contends that a complaint alleging only simple negligence cannot support an award of punitive damages.*

Respondent's initial pleading, the November 20, 1987, complaint, alleged a single cause of action, legal malpractice, and prayed for actual damages and costs. No punitive damages were requested.

Respondent's next pleading, the July 27, 1988, first amended complaint, contained two causes of action. The first, legal malpractice, was unchanged from the now-superseded complaint. The second cause of action was for deceit: Respondent there alleged that appellant knowingly and fraudulently misrepresented he was diligently prosecuting respondent's discrimination lawsuit. The prayer which was expressly restricted to the second cause of action, deceit, requested compensatory damages in excess of $50,000, costs, and "[f]or punitive damages on plaintiff's deceit claim only in the amount of $500,000.00."

---

[3] The section requires that the complaint be served within three years after it is filed.

Respondent's final change in his pleading occurred after jury selection but before opening statements. He then withdrew his second cause of action, deceit,[4] and its prayer appendage. (Evid. Code, §§ 452, 459.)

Thus, by the commencement of trial, the issues were framed by a pleading which alleged a single prayerless cause of action.[5] That cause of action contained seven paragraphs. Only two characterized appellant's conduct, as follows:

"4.  Defendants[6] and each of them, failed to exercise reasonable care, skill and diligence in so representing plaintiff, and negligently failed to commence such action within the period required by law, and the applicable statute of limitations by filing suit. In addition, defendants and each of them negligently failed to inform plaintiff the action had to be filed within any statutory period.

"5.  Defendants and each of them, failed to exercise reasonable care, skill and diligence in so representing plaintiff, and negligently lost the right to sue on November 22, 1986, on the three year time period for service in the matter of Jackson v. Airco."

Simple negligence, no more, was alleged. Such an allegation falls far short of the "oppression, fraud, or malice" required by Civil Code section 3294.[7] Simple negligence cannot support an award of punitive damages. (*Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 895 [157 Cal.Rptr. 693, 598 P.2d 854]; *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 632 [102 Cal.Rptr. 815, 498 P.2d 1063]; *Grieves* v. *Superior Court* (1984) 157

---

[4]The trial court, accordingly, did not instruct the jury concerning the deceit cause of action.

[5]At oral argument we asked counsel to explain the giving of punitive damage instructions. Respondent stated he had made an oral motion to add a punitive damages prayer to the complaint and the trial court had granted the motion. Appellant, who referred to his "extensive notes," *unequivocally* denied such a motion had been made or granted, contrary to the dissent's claim that appellant "was not sure."

Notwithstanding the dissent's laments, appellant provided a legally permitted appellate record. Although respondent could have augmented this record, he did not do so. Nor has this court chosen to augment the record. Nor, we might add, has respondent ever claimed that an augmented record would cure the subject defects.

The dissent characterizes as a "critical factual element" respondent's utterly unsubstantiated claim, flatly denied by appellant, that he made an oral, during-trial motion to append a punitive damage prayer to his simple negligence complaint. We regard such a claim as neither "critical" nor "factual."

[6]The plural only refers to Does 1 through 20.

[7]In pertinent part the section provides: "(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

Cal.App.3d 159, 166-168 [203 Cal.Rptr. 556]; *Oakes* v. *McCarthy* (1968) 267 Cal.App.2d 231, 264 [73 Cal.Rptr. 127]; *McDonnell* v. *American Trust Co.* (1955) 130 Cal.App.2d 296, 298-301 [279 P.2d 138].)

Appellant's contention is correct.

3. *Appellant contends that the punitive damage award is invalid because by its "0 dollars" actual damages verdict, the jury exonerated him of legal malpractice.*

Although appellant's previous contention is dispositive of this appeal, we believe it useful to briefly consider this additional contention.

In essence the argument is this: an element of malpractice is *actual loss*; the jury found there was *no* actual loss; since punitive damages are only ancillary to a valid cause of action (Civ. Code, § 3294), the punitive damages award is invalid.

### a. *Elements of legal malpractice tort*

"The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.] [¶] If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citations.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized does not suffice to create a cause of action for negligence." (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433], italics added; see *Pete* v. *Henderson* (1954) 124 Cal.App.2d 487 [269 P.2d 78, 45 A.L.R.2d 58]; see also *Smith* v. *Lewis* (1975) 13 Cal.3d 349, 361 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231].)

Thus, without "actual loss or damage" there is no tort.

Illustrative is *Harris* v. *Smith* (1984) 157 Cal.App.3d 100 [203 Cal.Rptr. 541]. Harris was injured by a driver who had been drinking. Harris hired a lawyer who sued that driver and others. But the lawyer did *not* sue a deputy sheriff (or his employer, the county) who had stopped the driver 20 minutes earlier, examined the driver, and released him. When it was too late to sue the deputy sheriff (or county) Harris hired a second lawyer to sue the first. A nonsuit was affirmed because, the county being without liability, Harris had suffered no damage.

Even closer to the instant facts is *Campbell v. Magana* (1960) 184 Cal.App.2d 751 [8 Cal.Rptr. 32]. Campbell was injured when the door of an incinerator, being displayed on the sidewalk by Cherry Hardware Company, fell on her foot. She retained lawyers to sue the hardware store. Due to the negligence of her attorneys to prosecute her lawsuit within five years, it was dismissed. She then sued her attorneys. The trial court found that her attorneys had been negligent but rendered judgment for *them* because, having no cause of action against Cherry Hardware Company, their negligence caused her no actual loss.

### b. *The jury found there was no actual loss*

The trial court instructed the jury concerning: burden of proof and preponderance of evidence (BAJI No. 2.60), when plaintiff is entitled to recover (BAJI No. 3.00), that plaintiff must prove damages resulting from attorney negligence (BAJI No. 6.37.5), compensatory damages (BAJI No. 14.00), loss of earnings (BAJI No. 14.11), pain and suffering (BAJI No. 14.13), lost personal property (BAJI No. 14.21), and nominal damages.[8] It did *not* give BAJI No. 16.00 or otherwise require the jury to make special findings concerning negligence, proximate damage, or the total dollar amount of damages.

Instead, the trial court merely provided the jury with two verdict forms. The "defense" form ("We . . . find for the defendant . . . and against the plaintiff . . .") only had to be signed and dated. The plaintiff form ("We . . . find for the Plaintiff . . . and against the Defendant . . . and assess damages in the sum of _____") required not only a date and signature but the insertion of a particular dollar amount.

During the second day of deliberations, at 11:40 a.m., the jury asked the trial court this question: "Must we as a jury decide if Jackson vs. Airco was winable or not winable in order to determine negligence or malpractice in this action Jackson vs. Johnson."

Although the record on appeal does not contain the trial court's answer to this question, we assume the trial court merely reiterated applicable, previously read, instructions.[9]

About three hours later, at 3 p.m., the jury returned their verdict. Instead of reading it, the court ordered it sealed. Phase two then commenced with the

---

[8] The court gave this special instruction: "Nominal damages are properly awarded where there is no loss or damage to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of defendant's dut[y] owed to the plaintiff."

[9] The record *does* reflect the question was answered and the record contains all court-given instructions.

court reading BAJI No. 14.72.1 (1989 rev.), requiring the jury to determine whether or not "oppression" or "malice" had been proved. Since such findings would be pointless if the sealed verdict was in defendant's favor, the court further told the jury that "if the jury has found in favor of the defendant, the jury will have to make no findings."

The jury resumed deliberations. Not surprisingly, 15 minutes later they asked the court this question: "If monetary damages were not awarded, do we need to reach a verdict on the additional issue of malice and oppression."

In order to answer the question the court unsealed the verdict. It read: "We . . . find for the Plaintiff . . . and against the Defendant . . . and assess damages in the sum of *0 dollars*." It was dated and signed by the foreman. Over appellant's objection, the trial court then answered the jury's question, "Yes, you do have to make findings."[10]

█ The trial court erred. It is plain the jury had by its verdict determined two dispositive issues. One, appellant had been negligent. That is, he *was* respondent's attorney, as such he had a duty of care, and he had breached that duty by failing to timely serve Airco with the complaint, thus causing the dismissal of the Jackson v. Airco lawsuit. Thus, the verdict "for" plaintiff. Two, if the Jackson v. Airco lawsuit had not been dismissed respondent would have lost and therefore appellant's negligence had caused him no actual damages. Thus, the: "assess damages in the sum of *0 dollars*."

There can be no mistake that the jury understood the need to determine if respondent would have won an undismissed Jackson v. Airco lawsuit. They perceptively and explicitly asked the trial court this very question.

Nor was there any mistake about the consequences of a respondent win. The trial court exhaustively instructed the jury about damages, lost wages, earning capacity and earnings. It was a simple matter to calculate the value of a $12 an hour job (bulk liquid driver) less what respondent earned without that job: e.g., $804.13 in 1983; $7,513.47 in 1984.

Whether evidence that respondent failed to obtain his class I driver's license until February 10, 1986, over three years *after* he applied for the

---

[10]The jury then returned a verdict finding "oppression" but not "malice." Thereafter, the third phase commenced. Respondent called appellant and elicited his earnings, savings, property holdings, debts and net worth. In sum, appellant had practiced law for 40 years, had for a few years earned $40,000 a year but had recently suffered two heart attacks and was now winding down his practice, currently he earned $15,000 a year, owned no real property, stocks, bonds, or certificates of deposit (CD's), had one $2,000 IRA, owned a 1983 Chevette and two inoperable junk cars, had a $3,500 checking account and a $5,000 credit card debt; he had 11 children, had put one through medical school and another through law school. His estimated net worth was $9,000. At 5:25 p.m., after 14 minutes of deliberation, the jury returned their third verdict assessing appellant $20,000 in punitive damages.

Airco bulk liquid driver position, caused the jury to determine respondent would have lost his lawsuit against Airco, cannot be determined. *That* they did so determine cannot be doubted.

The jury having determined that one of the elements of malpractice, actual damages, had not been established, the punitive damages award is invalid.

### c.  *Clark v. McClurg and its progeny*

We have no occasion to apply, construe, or "revise" *Clark* v. *McClurg* (1932) 215 Cal. 279 [9 P.2d 505, 81 A.L.R. 908]. Unlike *Clark*, the instant jury did not leave blank the actual damages assessment. Nor, as in *Clark* which concerned libel per se, may actual damages be *presumed*.

These two distinctions were held dispositive by the California Supreme Court in *Mother Cobb's Chicken T., Inc.* v. *Fox* (1937) 10 Cal.2d 203 (*Mother Cobb's Chicken*). A trial court, satisfied the plaintiff had proved unfair competition, found no actual damages but awarded $500 punitive damages. The Supreme Court reversed.

Just as *Mother Cobb's Chicken* is consistent with *Clark* v. *McClurg*, *Finney* v. *Lockhart* (1950) 35 Cal.2d 161 [217 P.2d 19] is consistent with both. There a $1 actual damages award supported a $2,000 punitive damages award. Since *Finney*, the California Supreme Court has not considered *Clark* v. *McClurg*.

Only one Court of Appeal decision requires comment: *James* v. *Public Finance Corp.* (1975) 47 Cal.App.3d 995 [121 Cal.Rptr. 670]. In a wrongful garnishment action, the plaintiff sought $271.99 actual damages (to avoid a fourth garnishment which might cost him his job, plaintiff took a week off, losing a week's wages), $10,000 for emotional distress, and $50,000 punitive damages. The jury returned a plaintiff's verdict with "$0" general damages and $1,750 punitive damages.

The Court of Appeal upheld the punitive damages award only by "liberally constru[ing]" the jury's verdict to mean that their $1,750 award was *not* solely for punitive damages but was partly for general damages.

This "liberal construction" is a euphemism for nullification. There was no suggestion of mistake or ambiguity in the verdict. The jury, after listening to conflicting testimony, including plaintiff's account of a lost $271.99 week's wages, *found* "$0" actual damages. The *James* Court of Appeal simply nullified the jury's finding.

The transparency of its nullification is illustrated by this rhetorical question it asked: "Must it therefore be that the jury's verdict in favor of the appellant was nullified merely because the digit that the forelady inserted in the blank space for general damages in the form with which she was provided was a zero?" (47 Cal.App.3d at p. 999.)

One might as well ask whether an accused must be freed "merely because . . . the forelady inserted [three little letters] in the blank space" before the word "GUILTY," the letters: N-O-T.

*James*, which fails to cite or consider *Mother Cobb's Chicken*, is wrongly decided and we decline to follow it.

### DISPOSITION

The judgment is reversed. Costs on appeal are awarded to appellant.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent. The majority hold the award of punitive damages in this case cannot stand because the pleadings at the time of trial did not allege fraudulent, malicious or oppressive conduct or include a prayer for punitive damages. This holding is undermined by the arguments of counsel at the second scheduled oral argument on this case in which respondent's counsel explained he made an oral motion during trial to append a prayer for punitive damages to the cause of action for legal malpractice.[1] Although appellant did not recall such a motion in his trial notes, he admitted the trial court "ruled" instructions on punitive damages

---

[1] Oral argument in this case was originally heard October 3, 1991. On December 23, 1991, we vacated the earlier submission and rescheduled the case for oral argument on February 7, 1992. Before oral argument on February 7, 1992, we requested briefing from counsel concerning the legal procedural basis for the court to instruct on and the jury to award punitive damages. We specifically inquired, inter alia, whether, based on the evidence adduced at trial, the court allowed an amendment to the complaint for the purposes of alleging oppressive conduct and to include a prayer for punitive damages.

At oral argument, respondent's counsel explained he made an oral motion to amend the complaint during trial which was granted. When the court inquired as to the predicate for punitive damages in this case, counsel for respondent responded: "Quite simply, during trial there was an oral motion to attach a punitive damage claim to the malpractice claim. . . ."

Appellant conceded the trial court "ruled" there was sufficient evidence of oppression to support an instruction on and award of punitive damages but was not sure respondent's counsel made a motion to amend the complaint. At oral argument the following exchange took place: [¶] "THE COURT: We are trying to determine whether there was . . . Where was the plea for punitive damages? Was there some kind of stipulation? Was there some kind of . . . . [¶] APPELLANT: There was a ruling of the court. The court gave an instruction on

would be appropriate based on evidence of oppression presented at trial. It thus appears the trial court allowed an amendment to the complaint during trial to include a prayer for punitive damages based on evidence of oppression presented at trial. In any event, it would seem patently obvious a trial court would not make such a "ruling" sua sponte in the absence of a motion on which to rule. Therefore, it further appears the majority's holding this case involved nothing more than simple negligence is clearly erroneous.

I further disagree with the majority's view the jury must have found respondent suffered no injury based on the verdict awarding zero compensatory damages, and from that fact alone, concluding the award of punitive damages cannot be sustained in the absence of an award of compensatory damages. This analysis misconstrues the law and the probable facts of this case. An award of punitive damages is appropriate not only when a plaintiff is awarded an actual sum for compensatory damages and the record reflects evidence of malice, fraud or oppression. As the cases demonstrate (see *post*), even in the absence of an award of compensatory damages, when the record supports a finding of actual damages suffered by a plaintiff, a punitive damage award is appropriate assuming there is also evidence of the statutorily required despicable conduct on the part of the defendant.

In this case the jury was instructed it could only find for the respondent if they found he had proved every element of his cause of action for legal malpractice—including damages. The jury found for respondent. Under normal circumstances an appellate court would review the record for evidence of a plaintiff's actual injury. In this case, however, appellant has prevented us from doing just that by failing—intentionally or otherwise—to provide this court with a record despite his obligation to affirmatively demonstrate prejudicial error in the record. The majority's holding, in looking solely to the verdict form, rewards appellant for his intransigence and allows him to avoid the consequences of a record presumably supporting the fact respondent suffered actual damages.

The majority opinion also ignores long-standing rules of appellate procedure which hold an appellant has the affirmative burden of demonstrating error in the record, and where the record is silent on the point in controversy, the finding or ruling on that contested issue will be presumed

---

punitive damages. . . . [¶] THE COURT: On the grounds there had been proof of oppression and all that sort of thing? [¶] APPELLANT: That's correct."

The majority opinion ignores this critical factual element of the procedural posture of this case. The majority opinion treats this additional significant information as if it did not exist. Indeed, the majority holding depends upon the nonexistence of any evidence of an authorized amendment to the complaint, contrary to any logical explanation for the trial court's "ruling," and contrary to the explanations of counsel at oral argument.

correct.[2] Because the majority opinion only arrives at its conclusion by ignoring or misconstruing the operative facts of this case and the appropriate appellate rules controlling its proper disposition, I must dissent.

I. *Apparently the Jury Found Respondent's Employment Discrimination Suit Was Meritorious and Would Have Resulted in a Collectible Judgment.*

In order to prevail on his legal malpractice cause of action, respondent had to demonstrate appellant's negligence caused respondent to lose a meritorious claim against Airco. In other words, respondent had to prove he would have prevailed and collected a judgment in his discrimination claim had appellant properly served Airco and prosecuted the case within the statutory period. (*Campbell* v. *Magana* (1960) 184 Cal.App.2d 751, 761 [8 Cal.Rptr. 32]; see also *Walker* v. *Porter* (1974) 44 Cal.App.3d 174 [118 Cal.Rptr. 468] [reversal of nonsuit because allegation in complaint judgment was "collectible" sufficient.].)

As noted, appellant did not submit a reporter's transcript to this court which would contain the testimony and other evidence presented by respondent to prove his underlying cause of action. However, documents in the clerk's transcript suggest respondent presented considerable evidence of his employment discrimination cause of action to the jury. For example, a reasonable inference from the court's instruction on respondent's burden of proof in his malpractice action is respondent at least satisfied his threshold burden of presenting some evidence on each of these elements:

---

[2]Because the record on appeal does not include a reporter's transcript of the actual trial it must be presumed ample evidence was presented to support the verdict in respondent's favor. "It is axiomatic in appellate review that a judgment of a lower court is presumed correct." (*County of Sacramento* v. *Lackner* (1979) 97 Cal.App.3d 576, 591 [159 Cal.Rptr. 1]; see also *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Every inference and presumption must be indulged to support the judgment on matters on which the record is silent. (*Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58]; 9 Witkin Cal. Procedure (3d ed. 1985) Appeal, § 268, p. 276.) One of the most fundamental principles of appellate procedure is error must be affirmatively demonstrated in the record. "This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." (9 Witkin Cal. Procedure, *op. cit., supra*, Appeal, § 268, p. 276.)

" 'This presumption has special significance when . . . the appeal is based upon the clerk's transcript.' 'It is elementary and fundamental that on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings, . . .' " (*National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 521-522 [258 Cal.Rptr. 506]; internal citations deleted; see also *Finney* v. *Lockhart* (1950) 35 Cal.2d 161, 164 ["The presence of the influential factors on the amount of the damages cannot be disclosed except by the record of the trial proceedings including the evidence. The problem cannot be resolved by an inspection of the judgment roll alone. Therefore the basis for the determination of the question is not in the record. On the present appeal it must be assumed the evidence was substantial in support of the amount of the verdict. . . ."].)

"The plaintiff has the burden of proving by a preponderance of the evidence all of the facts necessary to establish:

"1)   That the defendant undertook to represent the plaintiff as an attorney;

"2)   That the defendant was negligent (i.e., that he owed a duty to the plaintiff and that he breached that duty);

"3)   That the negligence of the defendant was a proximate cause of loss and damage to the plaintiff (i.e., that the prior lawsuit would have resulted in a collectible judgment in plaintiff's favor);

"4)   The nature and extent of the loss and damage claimed to have been incurred and the value thereof;

"5)   That the prior lawsuit was meritorious, i.e.:

"a.   That the plaintiff belonged to a protected class;

"b.   That the plaintiff applied and was qualified for a job for which the employer was seeking applicants;

"c.   That despite being qualified, the plaintiff was rejected; and,

"d.   That after the plaintiff was rejected, the position remained open and the employer continued to seek applicants.

"6.   If you find that AIRCO INDUSTRIAL's employment decision was for a legitimate nondiscriminatory reason, then the plaintiff has the burden of proving:

"That the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

"The defendant has the burden of proving by a preponderance of the evidence all of the facts necessary to establish:

"1)   That the plaintiff's cause of action is barred by the Statute of Limitations;

"2)   That the defendant was discharged by the plaintiff;

"3)   If you find that the plaintiff's prior lawsuit is meritorious, then the defendant must prove:

"That AIRCO INDUSTRIAL's employment decision was for a legitimate nondiscriminatory reason.

" 'Preponderance of the evidence' " means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to say that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.

"You should consider all of the evidence bearing upon every issue regardless of who produced it." (BAJI No. 2.60.)

The court also instructed the jury on compensable loss or damage from any malpractice.

"A plaintiff who has suffered loss or damage as a [proximate] result of some negligent conduct on the part of a defendant is entitled to recover compensation for such loss or damage from that defendant.

"Thus, the plaintiff is entitled to a verdict in this case if you find:

"1.   That a defendant was negligent, and

"2.   That such negligence was a [proximate] cause of [loss] or [damage] to the plaintiff." (BAJI No. 3.00.)

"A proximate cause of [damage] or [loss] is a cause which, in a natural and continuous sequence, produces the [damage] or [loss] and without which the [damage] or [loss] would not have occurred." (BAJI No. 3.75.)

The jury was also given an even more specific instruction advising them in order to find for respondent they had to find his employment discrimination suit would have resulted in a collectible judgment.

"In order to recover damages from an attorney for negligence in the handling of a lawsuit, the plaintiff must not only establish that the attorney was negligent but also must establish that but for such negligence the prior lawsuit [would have resulted in a collectible judgment in plaintiff's favor]." (BAJI No. 6.37.5.)

Most interesting was the question the jury submitted to the court during deliberations.

"Must we as a jury decide if 'Jackson v. Airco' was winable or not winable in order to determine negligence or malpractice in this action 'Jackson v. Johnson?' "

Presumably, the trial court reiterated its previous instruction quoted above that the jury had to find the discrimination cause of action would have been meritorious and would have produced a collectible judgment but for appellant's failure to prosecute respondent's case.

After comprehensive instructions and a specific clarification of this very issue, i.e., the necessity of finding respondent would have won in the underlying lawsuit in order to find for respondent, the jury found appellant liable for legal malpractice. Nevertheless, the jury awarded nothing in compensatory damages.

A judgment or order of the lower court is presumed correct. If there was any clear and sufficient finding on which a judgment could rest, it would be presumed in favor of the judgment that the trier of fact did rely on it, and inconsistencies or the insufficiency of other findings are disregarded. (*Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 583, 584 [2 Cal.Rptr. 609, 349 P.2d 289]; see also 9 Witkin, Cal. Procedure, *op. cit. supra*, Appeal, § 268, pp. 276-277.) Moreover, on appeal, the appellant must affirmatively show error by an adequate record. (*Erikson* v. *Sullivan* (1947) 81 Cal.App.2d 790, 791 [185 P.2d 31]; 9 Witkin Cal. Procedure, *op. cit. supra*, Appeal, § 418, p. 415.)

Because appellant supplied no transcript from the actual trial of the malpractice action, it is impossible to know precisely what testimony was given or what evidence was submitted to prove respondent's damage or loss from appellant's malpractice. In the absence of a record of these critical proceedings, we must presume there was sufficient evidence presented to the jury to support a finding appellant suffered loss or damage as a proximate cause of appellant's negligence as a necessary prerequisite to their finding of liability. Furthermore, and especially in light of the jury question to the court, we can presume the jury determined there was sufficient evidence to find respondent's underlying cause of action was meritorious and would have resulted in a collectible judgment.

In the absence of contrary evidence, and in view of the fact appellant has failed to affirmatively demonstrate error in the jury's finding, and has further failed to provide this court with a record to independently review the evidence for actual damage, it must be presumed the jury found respondent suffered actual damages or loss to sustain its finding of liability on the malpractice cause of action.

II. *A Zero Compensatory Damage Award Does Not Preclude an Award of Punitive Damages Where the Record Reflects Actual Damage Was Suffered as a Result of a Tortious Act of the Defendant.*

The majority alternatively conclude there is no legal basis for an award of punitive damages because the jury returned a verdict of liability but awarded

$0 in compensatory damages. The majority suggest, because the jury awarded nothing in compensatory damages, the finding of liability on the malpractice cause of action cannot stand and because liability for malpractice has been nullified, there is no legal basis for the award of punitive damages.

I agree with the general rule exemplary or punitive damages are a mere incident to a cause of action and cannot constitute the basis of an award of damages without proof of a tortious act causing actual, nominal or presumed damages. (*Clark* v. *McClurg* (1932) 215 Cal. 279, 282 [9 P.2d 505, 81 A.L.R. 908]; *Haydel* v. *Morton* (1935) 8 Cal.App.2d 730, 737 [48 P.2d 709]; *Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 801 [197 P.2d 713].) However, the rule in this state is when a tortious act and proximately caused damages are shown, there need be no express finding by the jury of either the existence or the monetary extent of compensatory damages to support an award of punitive damages. (*Clark* v. *McClurg, supra,* 215 Cal. at p. 283.)

The Supreme Court in *Clark* rejected the contrary rule in other jurisdictions of requiring an express finding of actual damages as a predicate for exemplary damages in favor of the rule a punitive damage award may stand if actual damages are nominal, presumed or shown by the evidence even if the jury fails to award compensatory damages. *Clark* involved an action for libel per se. The evidence showed the statements were false and unprivileged. However, the jury left the space on the verdict form for an award of actual damages blank but awarded $5,000 in punitive damages. The court noted in cases of defamation per se there is a presumption actual damage was sustained, even though it may be nominal or incapable of accurate measurement. The court held even a presumption as involved in that case will satisfy the rule requiring the showing of actual damages before an award of punitive damages be made. After reviewing conflicting authorities from other jurisdictions, the court adopted the rule that once actual damages are shown, even though its "money extent" is "not shown, or found," exemplary damages may be awarded if the other elements supporting their recovery are present. (215 Cal. at p. 282.) Thus, despite the jury's possible error, the Supreme Court upheld the award of punitive damages stating: " 'We are disposed to liberally construe the verdict in this case as a general verdict covering all of respondent's damages, both actual and punitive, rather than strictly as an erroneous verdict. The judgment should not be reversed because of the form of the verdict. [Citation.]' " (*Id.* at. p. 285.)

This proposition has been extended and expanded to even include situations in which there is no prayer for compensatory damages in the complaint. *Weiss* v. *Blumencranc* (1976) 61 Cal.App.3d 536, 542 [131 Cal.Rptr. 298],

was an equitable action for dissolution of a partnership and an accounting. The complaint included no prayer for compensatory damages but requested punitive damages. The court acknowledged "[a]lthough Weiss did not pray for an award of actual damages, he met the necessary requirement of the statute by alleging and proving [defendant's] tortious acts and actual damages caused thereby." (*Id.* at p. 544.) The court upheld the award of punitive damages because "where the body of the complaint sets forth facts on which an award of punitive damages may be predicated" the award of punitive damages will not be precluded. (*Ibid.*)

In *Topanga Corp.* v. *Gentile* (1967) 249 Cal.App.2d 681 [58 Cal.Rptr. 713], the plaintiff sought equitable relief from alleged fraudulent transactions against the defendant stock promoters. Punitive damages were pled while actual damages were neither prayed for nor recovered. The trial court granted equitable relief, but denied punitive damages, apparently because no compensatory damages were awarded. On review, the appellate court reversed, finding "the fact that plaintiffs were not given a grant of monetary damages of a certain amount is not determinative. Plaintiff was indeed damaged by defendants' fraud for defendants had, as the result of the fraud, received stock in an amount not commensurate with the value of their contribution to the corporation. . . . [¶] The requirement of 'actual damages' imposed by section 3294 is simply the requirement that a tortious act be proven if punitive damages are to be assessed." (*Id.* at p. 691.)

In *Esparza* v. *Specht* (1976) 55 Cal.App.3d 1 [127 Cal.Rptr. 493], the question on review was whether the plaintiff suffered actual damages sufficient to sustain an award of punitive damages. The trial court allowed the plaintiff to recover on the promissory note but offset this amount by the defendant's cross-complaint for fraud and misrepresentation in the sale of the life insurance policy. The trial court then granted defendant's motion for nonsuit finding that after the offset there was no showing of actual damages and therefore no injury on which to base an award of punitive damages. The appellate court reversed, reasoning whether the plaintiff recovered as an offset or in damages, he was nevertheless injured within the meaning of Civil Code section 3294 sufficient to sustain an award of punitive damages. "It is well settled in California that punitive damages cannot be awarded unless actual damages are suffered. [Citations.] . . . Where the plaintiff's recovery is in the form of restitution [citation] or requiring the defendant to surrender stock in a close corporation which increases the value of plaintiff's stock [citation], plaintiff has indeed been damaged even though monetary damages are not awarded. The requirement of 'actual damages' imposed by section 3294 is simply the requirement that a tortious act be proven if punitive damages are to be assessed." (55 Cal.App.3d at p. 6.)

In *Werschkull* v. *United California Bank* (1978) 85 Cal.App.3d 981 [149 Cal.Rptr. 829], participants in an employees' pension plan brought a class action suit against their employer, and the trustee of the fund, for illegal diversions of pension funds and fraudulent concealment of the diversions. Trial of liability and entitlement to punitive damages was before a jury. The jury determined plaintiffs had suffered actual damage because of the wrongful transfers and were entitled to punitive damages. The trial court awarded damages in the third phase of the trial. The court found it was impossible to ascertain the amount of damages because it was unknown what pension increases would have been granted, if any. The trial court gave a nominal award of $1 in compensatory damages, reluctant to arbitrarily pick any greater dollar amount. On appeal the defendant argued the award of punitive damages was improper because there was no evidence plaintiffs suffered as a result of the concealment. After an exhaustive review of similar cases upholding punitive damage awards based on equitable relief, nominal or presumed damages, the appellate court concluded the award of punitive damages was proper. "In those cases which involve a breach of fiduciary relationship, the requirement that there be proof of actual damage in order to support an award of exemplary damages is greatly deemphasized. This concept of punishing the wrongdoer for violating his trust, notwithstanding a lack of apparent injury to his beneficiary, is not new. In the 1919 case of *Memefee* v. *Oxnam* [1919] 42 Cal.App. 81 [183 P. 379], the problem on appeal concerned the misdeeds of one of several joint venturers. The court pointed out that, although it is the general rule that fraud without at least some slight injury is not ground for relief, 'this general rule is not an obstacle to recovery in cases of the kind here under consideration, even though there be a total absence of injury to the complaining party. . . . Both law and equity have a most tender regard for the rights of a complaining party growing out of a fiduciary relationship. So that where any abuse of that relation is discovered, the complaining party is entitled to relief, whether any actual damage be established or not. . . .' " (*Id.* at p. 1004.)

Applying this principle to the *Werschkull* case, the court concluded "the jurors' finding in this case that plaintiffs suffered actual damages in some unspecified amount as a result of UCB's fraudulent acts of concealment, furnishes ample support for their award of punitive damages." (85 Cal.App.3d at p. 1004.)

In *Sterling Drug, Inc.* v. *Benatar* (1950) 99 Cal.App.2d 393, 400 [221 P.2d 965], the court upheld an award of nominal damages in the amount of $1 and punitive damages in the amount of $200, stating, "Nominal damages are not only recovered where no actual damage resulted from an ascertained violation of right but also where actual damages have been sustained, the extent

of which cannot be determined. [Citations.] The granting of exemplary damages in cases of the latter kind is not inconsistent with the rule that actual damage is a necessary predicate of punitive damages [citation]."

The case which is most factually similar to the case at bar is *James* v. *Public Finance Corp.* (1975) 47 Cal.App.3d 995 [121 Cal.Rptr. 670]. *James* involved a suit for wrongful garnishment of the plaintiff's wages. The jury returned a verdict " 'For general damages the sum of $0' " and " 'For punitive damages the sum of $1,750.00.' " (*Id.* at p. 997.) On appeal, the defendant attacked the award of punitive damages as inappropriate where the jury specifically found the plaintiff had suffered no actual damages as evidenced by the verdict. An independent review of the record, however, revealed plaintiff had suffered at least nominal damages. Thus, the appellate court framed the issue on appeal as, "Must it therefore be that the jury's verdict in favor of the appellant was nullified merely because the digit that the forelady inserted in the blank space for general damages in the form with which she was provided was a zero?" (*Id.* at p. 999.)

In support of his position the defendant in *James* cited *Haydel* v. *Morton, supra,* 8 Cal.App.2d 730, in which it was held a verdict for zero compensatory damages would not support an award of punitive damages. In *Haydel,* the plaintiff sued for malicious prosecution and slander. On the malicious prosecution count the jury awarded compensatory damages of $14,000 and punitive damages of $25,000. On the two remaining slander counts the jury returned a separate verdict for the plaintiff assessing compensatory damages of $0 and exemplary damages of $10,000. On a motion for a new trial, the malicious prosecution count was allowed to stand but a new trial was ordered on the slander counts.

On appeal, the appellate court did an independent review of the evidence and found the plaintiff had admitted taking checks from the hospital and depositing them into his own account. Thus, the appellate court found the undisputed evidence supported a finding the statements defendant made were truthful and provided sufficient probable cause to arrest plaintiff. Under these circumstances, the court concluded "When the jury returned verdicts assessing 'compensatory damages in the sum of $00' it did not 'inadvertently or by some mischance omit to assess the compensatory damages', but it 'expressly found and determined' that plaintiff 'had *not* suffered any actual damages'." (*Haydel, supra,* 8 Cal.App.2d at p. 737, italics in original.)

The *James* court noted the *Haydel* decision was factually distinguishable. In *Haydel,* the jury awarded damages on some counts and not others, indicating the award of zero damages on the slander counts was not due to

inadvertence or misunderstanding. In *James*, actual damages were evident from the record whereas an independent review of the record in *Haydel* revealed plaintiff had suffered no injury at all. Because actual damages are a prerequisite for an award of punitive damages, the *James* court distinguished the *Haydel* decision stating "there was no finding or clear showing that actual damages were in fact sustained in *Haydel*, and consequently there was no proof that there was a 'tortious act' as a prerequisite for the recovery of punitive damages." (47 Cal.App.3d at p. 1004.) Because there was evidence of actual damage in *James*, that court liberally construed the verdict "as a general verdict covering all of appellant's damages, both actual and punitive, and should not be negated because of a defect in form." (*Id.* at p. 1006.)

The same rationale applies with equal force to the case at bar. The jury returned a verdict in favor of respondent but awarded zero compensatory damages and $20,000 in punitive damages. Upon learning the jury awarded nothing in compensatory damages, the trial court expressed the view the jury may have had difficulty assessing the amount of respondent's damages.[3] The trial court apparently was satisfied respondent had proved a tortious act and resulting injury. In any event, it can be presumed respondent's underlying cause of action was meritorious based upon the jury's specific question to the court—"Must we as a jury decide if 'Jackson v. Airco' was winable or not winable in order to determine negligence or malpractice in this action 'Jackson v. Johnson?"—and the verdict they subsequently returned in favor of respondent.

The verdict returned is evidence the jury found the appellant's negligent representation caused respondent to lose his otherwise "winable" employment discrimination lawsuit. The jury apparently found respondent's underlying claim was meritorious, i.e., that it would have resulted in a collectible judgment. The loss of a collectible judgment by definition means the lost opportunity to collect a money judgment from a solvent tortfeasor and is certainly legally sufficient evidence of actual damage.

It is the fact actual damages were sustained rather than whether such damages were reduced to a money judgment which satisfies the prerequisite

---

[3] "THE COURT: Mr. Johnson, 6.35.5 of BAJI states, as far as I can recall, that before they can award damages to the plaintiff . . . [¶] that the jury has to find that you were negligent . . . [¶] in your representation and that the prior lawsuit would have resulted in a collectible judgment.
"MR. JOHNSON: Yes.
"THE COURT: And I believe that's a correct statement of the law.
"MR. JOHNSON: I concur with you.
"THE COURT: So it's possible that they found that you were negligent but found that—but found that there was a collectible judgment but that there was insufficient proof as to damages and therefore award the plaintiff nothing by way of damages.
"MR. JOHNSON: Right.
"THE COURT: That's a possibility."

for an award of punitive damages. Thus, a jury verdict of zero compensatory damages does not preclude an award for punitive damages if there is evidence in the record establishing an actionable wrong by defendant and this wrong resulted in some injury to the plaintiff. (*James, supra,* 47 Cal.App.3d at pp. 1004-1005.)

As earlier stated, appellant failed to provide this court with a reporter's transcript of the actual trial which presumably contains the testimony and other evidence presented to the jury to allow them to make the finding respondent actually suffered damages. It must, therefore, be presumed there was sufficient evidence of actual injury to respondent to sustain a finding of liability on that cause of action. (*Walling* v. *Kimball, supra,* 17 Cal.2d 364, 373; *Steuri* v. *Junkin* (1938) 27 Cal.App.2d 758, 760 [82 P.2d 34] ["legal presumptions do not come to the aid of the record except as to acts or facts touching which the record is silent. When the record states what was done, it will not be presumed that something different was done."]; 9 Witkin, Cal. Procedure, *op. cit. supra,* Appeal, § 268, pp. 276-277.)

No one seriously disputes the sufficiency of the evidence to support the jury finding of oppression to warrant instructions on punitive damages in this case. The jury was instructed they could not award punitive damages unless they found malice or oppression in appellant's conduct towards respondent. The jury was instructed "Oppression means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (BAJI No. 14.72.1 (1989 rev.).)

The jury was further instructed "The plaintiff has the burden of proving by clear and convincing evidence all the facts necessary to establish: That defendant's conduct on which you based your finding of liability was malicious or oppressive toward the plaintiff." (BAJI No. 2.62 (1988 new).)

The record contains written communications between appellant and respondent in which appellant refused to continue work on respondent's case unless and until he was paid the balance of his retainer fee. The majority inexplicably characterize these communications as a mere exchange of impersonal letters. To the contrary. These letters, standing alone, would support a finding of a conscious disregard for the rights of others even without the benefit of whatever other evidence respondent presented at trial to prove oppression. The following are excerpts from appellant's letters to respondent:

"At the time you retained me, the agreed fee to handle your matter was the sum of $500. To date you have paid $200. . . . Since you are making demands upon me for a more expeditious handling of your case, I would think it only fair that you pay the balance of your retainer fee which is the sum of $300. Upon receipt . . . , I will accede to your requests."

"It is impossible for me to proceed without proper funding. The retainer that I charge is a 'bare bones' figure. I cannot proceed without further money from you."

"It is not my intention to spend one penny in furtherance of your law suit. If you want your file you will have to come to my office and get it. You come to me with a sad story, I took your case and filed your law suit. You owe this office $300 and I intend to collect the same."

Appellant in fact refused to perform any further services and respondent lost the opportunity to pursue his lawsuit against Airco.

Presumably, the jury followed the court's instruction and found oppression by clear and convincing evidence before awarding punitive damages against appellant. In the absence of the critical portions of the record to allow this court to conduct an independent review of the evidence, it must be presumed sufficient evidence was presented at trial to support the jury's finding of oppression and the award of $20,000 in punitive damages.[4]

There is nothing in this record or about this case which could reasonably indicate a contrary conclusion. I, therefore, dissent from the majority opinion finding the award of punitive damages inappropriate and would affirm the judgment.

---

[4]In this appeal appellant does not challenge the punitive damage award as excessive. Accordingly, this case raises no issues as to the amount of the award under *Adams* v. *Murakami* (1991) 54 Cal.3d 105 [284 Cal.Rptr. 318, 813 P.2d 1348], or *Pacific Mutual Life Insurance Co.* v. *Haslip* (1991) 499 U.S. __ [113 L.Ed.2d 1, 111 S.Ct. 1032].